Judgment rendered August 14, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 992,
La. C. Cr. P.

No. 52,822-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Plaintiff-Appellee

versus

STEVEN ARNOLD                               Defendant-Appellant

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 16-CR-27869

Honorable Amy Burford McCartney, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Carey J. Ellis, III

GARY V. EVANS                          Counsel for Appellee
District Attorney

KENNETH P. HAINES
Assistant District Attorney

* * * * *

Before PITMAN, STONE, and COX, JJ.

**COX, J.**

This criminal appeal arises from the 42nd Judicial District Court, DeSoto Parish, Louisiana. Steven Arnold was found guilty as charged of possession with intent to distribute methamphetamine and sentenced to 20 years' imprisonment at hard labor. Arnold now challenges his conviction on appeal. For the following reasons, we affirm his conviction and sentence.

**FACTS**

On July 8, 2016, the DeSoto Parish Narcotics Task Force executed a search warrant at 127 Quail Trail in Stonewall, Louisiana.[1] No one was at home when the Task Force arrived. During the search of the master bedroom, the agents recovered multiple plastic bags containing a total of 4.7 grams of suspected crystal methamphetamine and a loaded syringe of suspected liquid methamphetamine. The officers also recovered two digital scales, hundreds of extra plastic bags, butane burners, spoons, straws, and pipes. Some items were covered in residue suspected to be methamphetamine. Investigating officers obtained arrest warrants for two persons, Steven Arnold and Helen Meza.[2]

On August 23, 2016, a Steven Arnold, born July 22, 1962, with an address of 8974 W. Starwood Lane, Greenwood, Louisiana 71033, was charged by bill of information with two counts of distribution of

---

[1] The record does not include a copy of the search warrant executed that day, so it is not clear what names were actually listed on the search warrant.

[2] Two arrest warrants were issued on July 11, 2016, for a Steven Arnold, with a residence of 127 Quail Trail, Stonewall, Louisiana 71078. A notice of custody of arrested person was filed July 15, 2016, and showed that the DeSoto Parish Sheriff's Office had custody of a Steven Arnold, a white male born July 22, 1962, with an address listed at 8974 W. Starwood Lane, Greenwood, Louisiana 71033. Bail was set at $15,000.00, and an attorney with the indigent defender board was appointed to represent Arnold.

methamphetamine and one count of possession of methamphetamine with the intent to distribute. Helen Meza was also charged on all three counts.

On September 25, 2017, a Steven Arnold, born July 22, 1962, with an address of 127 Quail Trail, Stonewall, Louisiana 71078, was charged by an amended bill of information with possession of a Schedule II, controlled dangerous substance, methamphetamine, in violation of La. R.S. 40:967(A)(1). The record reflects that, other than a motion for preliminary hearing, no other pre-trial motions were filed.

The evidentiary portion of the jury trial began before Judge McCartney on July 23, 2018, with opening statements. During the State's opening argument, the defense objected that the State made an improper reference to an envelope observed, but not seized, by investigating officers and asserted that the envelope constituted hearsay evidence. The State responded that the officer would be testifying about his observation of the envelope. Judge McCartney reminded the jurors that the opening statements did not constitute evidence, but did not formally rule on the defense's objection.

Agent Landon Williamson, with the DeSoto Parish Narcotics Task Force and the Shreveport Drug Enforcement Agency Task Force, testified that a search warrant was executed on July 8, 2016, at 127 Quail Trail, Stonewall, Louisiana. Agent Williamson testified that no one was at the residence at the time the SWAT team entered and cleared the home. Agent Williamson testified that he searched the master bedroom and found butane bottles on top of the nightstand, with burners attached, and razor blades. Inside the nightstand, Agent Williamson found numerous empty plastic bags, syringes, spoons, straws, and two digital scales, all of which had

2

residue believed to be crystal methamphetamine. In the bottom drawer of the nightstand, Agent Williamson found a black case holding more plastic bags containing 4.7 grams of suspected crystal methamphetamine, a capsule with white material inside, and a syringe loaded with .3 milliliters of suspected liquid methamphetamine.

Agent Williamson testified that his investigation of the home led him to believe that Arnold lived there. Agent Williamson also testified that in the master bedroom of the home, he observed a piece of mail addressed to Steven Arnold at the 127 Quail Trail address. The defense attorney objected and Judge McCartney held a bench conference.

The defense objected that the envelope was inadmissible hearsay evidence because the envelope contained a "written assertion." The State responded that the envelope was "*res gestae*" and that the officer was merely testifying as to what he observed during the execution of the search warrant. The State argued that the testimony about the officer's observation of the envelope was to show that Arnold received mail there and that the mail was found on the premises, not to establish that the envelope was evidence that Arnold lived there. The State contended that the envelope created an inference that Arnold was connected with the residence where the drugs and paraphernalia were found. Judge McCartney overruled the hearsay objection and found that the testimony was admissible. The defense attorney objected to the ruling.

Agent Williamson identified in court all of the items that were seized from the master bedroom (introduced into evidence as State's Exhibits 1, 2, 3, and 4). He stated that the suspected liquid methamphetamine found in the loaded syringe was transferred into a vial for safe transfer to the crime lab.

Agent Williamson testified that Arnold contacted him by phone and asked what his options were. Agent Williamson stated that he told Arnold he needed to turn himself in, and Arnold replied that he could not do that. There was no indication of whether or not the phone call was recorded. Arnold was later arrested by U.S. Marshals on July 13, 2016. Agent Williamson identified Arnold in court.

On cross-examination, Agent Williamson testified that the envelope he saw addressed to Arnold at 127 Quail Trail was not seized and not logged into evidence. Agent Williamson testified that a photograph was taken of the envelope, but the photograph was not brought to court. He could not recall the sender or the postmark date on the envelope. Agent Williamson also testified that he did not observe or seize any other evidence from inside the residence that had Arnold's name on it. He confirmed that the officers did not find any vehicle at the residence registered in Arnold's name. The officers did not attempt to obtain fingerprints or DNA because that was not commonly done when executing search warrants. Agent Williamson testified that the only physical evidence he had linking Arnold to the residence was the envelope that he observed but did not seize.

Donna Richardson testified that she knew Arnold through her employment and she identified Arnold in court. Richardson also testified that she was aware that Arnold resided at 127 Quail Trail because she verified it through her employment. On cross-examination, Richardson testified that she began working for her current employer in 2002 and that she became an agent in 2011. Richardson testified that she personally met Arnold at 127 Quail Trail one time and there was a car in the driveway, but she did not know who owned the vehicle. Richardson testified that she

concluded that Arnold lived there because there were four to five dogs there and that Arnold told her that the dogs belonged to him.

Deputy Jason Goff, with the DeSoto Parish Sheriff's Department narcotics division, testified that he prepared the evidence transfer sheet that accompanied the evidence sent to the North Louisiana Crime Lab for testing of the suspected crystal methamphetamine. Deputy Goff identified State's Exhibits 5 and 6 as the evidence transfer sheets. Deputy Goff did not participate in the raid.

Bruce Stentz, with the North Louisiana Crime Lab, was accepted as an expert in forensic chemistry. Stentz identified State's Exhibits 1 and 3, the items that he tested and found positive for methamphetamine. The items tested included multiple resealable plastic bags containing a white powder; a clear capsule containing white material; and, a plastic bottle with a vial inside that contained liquid. Stentz identified State's Exhibit 7 as the certified lab report that he prepared after his tests and analysis. Stentz testified that the drugs were not weighed because the amount of the drugs seized was not above a specific threshold amount and he was not required to weigh the drugs. At the time of Arnold's 2016 offense, the threshold was 28 grams because that was the point at which the penalty increased.

On the second day of trial, the defense attorney moved for a mistrial on grounds that if the envelope was determined to be hearsay evidence on appeal, then the State's reference to the envelope during the opening arguments was an improper reference to inadmissible evidence that would trigger a new trial. The State again asserted that the testimony about the envelope was only offered as evidence of what the officer observed during the execution of the search warrant. Judge McCartney denied the motion for

mistrial, noting that she had already addressed the issue of whether or not the envelope constituted hearsay evidence.

Carl Townley, a former supervisor with the Caddo-Shreveport Task Force, was accepted as an expert in narcotics investigation and packaging and the use and sales of narcotics. Townley testified that he had reviewed the reports and evidence seized in the case. Townley reviewed the items seized in court and noted drug paraphernalia common to distribution: the multiple small bags containing methamphetamine, the two digital scales, and 224 unused plastic bags (for use as packing materials). He also noted the straws, the spoons with residue on them, the butane bottles with burners, and the syringe that had been loaded with liquid methamphetamine.

Townley opined that it was not unusual to find personal drug use items in a dealer's house because the methamphetamine users usually deal drugs to support their habit and there are usually customers who will purchase the drugs and use them there. However, he also noted that it would be unusual to find scales and such a large number of extra bags in a house where there was only personal drug use and not also distribution. Townley testified that the scales and the extra bags were indicators of selling drugs. He also testified that there was no cash seized at the scene, but noted that the absence of cash could be due to the fact that they just purchased more drugs to sell or because dealers have learned not to keep their cash with their drugs. Townley testified that the amount of methamphetamine found at the house could be for personal use or for distribution, depending on a person's tolerance and the purity of the product.

In Townley's expert opinion, the evidence found at 127 Quail Trail indicated possession of methamphetamine with the intent to distribute, based

on the presence of the methamphetamine found in multiple bags, the two sets of digital scales, and the large number of unused bags. Townley stated that the syringe loaded with liquid methamphetamine could have been for personal use or could have been for sale.

Helen Meza testified that at the time of the raid on July 8, 2016, she lived at 127 Quail Trail with her boyfriend, Arnold. Meza pled guilty to possession of methamphetamine and was sentenced to serve two years in prison, with one year probation. Meza testified that she served nine months and had been released on parole, but recently failed a urine test and was remanded to jail. Meza testified that she was not offered any deal by the prosecution in exchange for her testimony. Meza testified that the methamphetamine recovered at the residence belonged to both her and Arnold, and that they both used and sold drugs. Meza confirmed that people would come to the residence to buy and use drugs. She stated they weighed the drugs using the scales and they packaged the drugs using the empty bags.

On cross-examination, Meza testified that she was 49 years old, had graduated high school, and had worked for several years in the coding and admitting department at Willis-Knighton. After a brief residency in Michigan, she returned to Louisiana and began living in Stonewall. The trailer located at 127 Quail Trail was on her mother's property. Meza testified that she began using methamphetamine at age 15 and, except for a short time while her children were young or when she was incarcerated, she used methamphetamine daily. Meza testified that she had one dog at the residence, while her mom had three dogs.

Meza admitted that her testimony contradicted her earlier statement made to law enforcement officers after her arrest, when she stated that

Arnold was not involved with the drugs. Meza testified that she and Arnold made a deal—since she did not have any prior felonies, she would "take the fall" for this offense.

The State rested. The trial court informed Arnold of his Fifth Amendment rights, and he elected not to testify.

The defense began its case in chief with testimonies from Sergeant Travis Chelette and Sergeant Cody Bailey, both from the DeSoto Parish Sheriff's Department. Both officers were a part of the SWAT team that cleared the residence before the narcotics team entered. Both officers testified that no one was home when they arrived at the residence. Sgt. Chelette testified that the SWAT team was there to locate people and secure the scene, but did not participate in the search of the residence.

Agent Casey Hicks, a narcotics investigator with the DeSoto Parish Sheriff's Department, testified that he was part of a three-person team that assisted with the search of the residence. Agent Hicks testified that he found a methamphetamine pipe in a back bedroom and two methamphetamine pipes in pool sticks. He stated that although he did not read the search warrant or see any names at the residence, he believed the house belonged to Arnold. Agent Hicks testified that he did not search the same area as Agent Williamson.

Agent Chato Atkins, also a narcotics investigator with the DeSoto Parish Sheriff's Department, testified that he participated in the search of the home, which he considered to be in a "junkie" state. He stated that during the search, he saw narcotics, men's clothing, and a letter addressed to Arnold in the master bedroom. Agent Atkins testified that he believed that Meza and Arnold owned the house.

Agent Landon Williamson was recalled and testified that the only thing that he observed during his search that was specifically personal to Arnold was the envelope addressed to Arnold at 127 Quail Trail. He stated that he did not seize the envelope as evidence during the search. On cross-examination, Agent Williamson testified that he had personal knowledge of Arnold being at that residence and residing there because he had observed Arnold there on multiple occasions and had observed that Arnold was present in the master bedroom.

The defense rested and both sides presented their closing arguments. The State asserted that the methamphetamine and drug distribution paraphernalia found at 127 Quail Trail, where Arnold was living with his girlfriend Meza, was sufficient evidence to prove that Arnold was guilty of possession of methamphetamine with the intent to distribute. The defense argued that the State failed to prove its case beyond a reasonable doubt because there was no physical evidence presented to establish that Arnold lived at 127 Quail Trail. The defense argued that Meza was not credible because she was admittedly addicted to methamphetamine and gave testimony that completely contradicted the statement she gave to law enforcement after her arrest. The defense further argued that testimony by Donna Richardson was not credible because she assumed that Arnold lived at the Quail Trail home based on the presence of eight dogs, while Meza testified that there was only one dog.

On rebuttal the State argued that Richardson had actually testified that she saw four to five dogs. The State also asserted that the lack of physical evidence linking Arnold to the residence was because as a methamphetamine user and dealer, Arnold did not live like everyone else.

On September 24, 2018, the jury returned a unanimous verdict of guilty as charged.

On November 5, 2018, Arnold filed a motion to recuse Judge McCartney. Arnold's defense attorney asserted that Judge McCartney should recuse herself due to the fact that she ruled in the pre-trial meeting in chambers that the State could avoid the issue of presenting other crimes evidence by instructing Donna Richardson that she could simply state that she knew Arnold and she knew where Arnold lived "through her employer." The defense attorney asserted that the State could not lay a proper foundation for the basis of Richardson's knowledge without disclosing that Richardson only had the knowledge through her role as Arnold's probation and parole officer, which would constitute "other crimes evidence."

The defense attorney further asserted that allowing Richardson to testify that she knew Arnold's living situation "through her employer," impeded his ability to effectively cross-examine Richardson because it would have "opened the door" to allow other crimes evidence. The defense attorney contended that "through the cooperation of the trial court and the district attorney, the State was allowed to finesse the requirements of La. C.E. 404(B)," and this resulted in the jury being misled.

At the November 8, 2018 hearing on the motion, the defense attorney acknowledged that he made no contemporaneous objection about Richardson's testimony at trial and that the motion was untimely filed, but argued that he could not raise an objection without "opening the door" to other crimes evidence. He asserted that Judge McCartney should voluntarily recuse herself under La. C. Cr. P. art. 672 because she "actively assisted the

10

State in prosecuting" Arnold.[3]  The defense attorney also complained that the State failed to lay a proper foundation for Richardson's testimony.

In opposition, the State argued that under La. C. Cr. P. art. 674, the motion to recuse was untimely filed; that under La. C. Cr. P. art. 671, the motion failed to state a valid ground for recusal; and, that under La. C. Cr. P. art. 841, there was no contemporaneous objection made at trial to Richardson's testimony.[4]  The State also argued that Richardson's testimony that she knew Arnold through her employment and knew where Arnold lived, did not fall under "other crimes evidence."  The State asserted that Richardson's testimony merely served to corroborate the testimony of Meza, the main witness.

---

[3] La. C. Cr. P. art. 672 provides that a judge may recuse himself, whether a motion for his recusation has been filed by a party or not, in any case in which a ground for recusation exists.

[4] La. C. Cr. P. art. 674 provides that a motion to recuse shall be filed prior to commencement of the trial unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after the facts are discovered, but prior to verdict or judgment.

La. C. Cr. P. art. 671 provides:

A. In a criminal case a judge of any court, trial or appellate, shall be recused when he:
(1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;
(2) Is the spouse of the accused, of the party injured, of an attorney employed in the cause, or of the district attorney; or is related to the accused or the party injured, or to the spouse of the accused or party injured, within the fourth degree; or is related to an attorney employed in the cause or to the district attorney, or to the spouse of either, within the second degree;
(3) Has been employed or consulted as an attorney in the cause, or has been associated with an attorney during the latter's employment in the cause;
(4) Is a witness in the cause;
(5) Has performed a judicial act in the case in another court; or
(6) Would be unable, for any other reason, to conduct a fair and impartial trial.

La. C. Cr. P. art. 841 provides that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.

11

Judge McCartney asked what specific grounds, listed under La. C. Cr. P. art. 671, served as the basis for the motion to recuse. The defense attorney replied that Subsection (A)(1) applied, which states that a trial court judge shall be recused when she is biased, prejudiced, or personally interested in the cause to such an extent that she would be unable to conduct a fair and impartial trial.

Judge McCartney then made the following statements in denying the motion:

- There was a misrepresentation of facts regarding what occurred during the meetings in chambers, but no transcript was available.

- The court did not collaborate with the State in an attempt to mislead the jury or tell the prosecution how to prosecute their case.

- The meeting in chambers on Richardson's testimony occurred before trial, but the motion to recuse was untimely filed more than three months after the verdict, in violation of La. C. Cr. P. art. 674. The motion was denied as untimely filed.

- The motion to recuse failed to state a valid ground for recusal under La. C. Cr. P. art. 671, so Judge McCartney also denied the defense attorney's request to present witnesses. The defendant's motion for a stay while he sought supervisory review of the ruling was denied.

On November 5, 2018, Arnold filed a motion for new trial, asserting that the ends of justice would be served by granting him a new trial, pursuant to La. C. Cr. P. art. 851(B)(5).[5] The defense again argued that there was a pre-trial objection raised in chambers about Donna Richardson's testimony of her knowledge about where Arnold resided and the trial court ruled that Richardson could testify that the basis of her knowledge was simply "through her employment." Arnold argued that this testimony was

---

[5] La. C. Cr. P. art. 851(B)(5) states that the court may grant a new trial when the court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal rights.

12

prejudicial because it misled the jury. Arnold also argued that this testimony violated Arnold's confrontation rights by preventing Arnold's attorney from effectively cross-examining Richardson regarding significant and contested evidence that was the basis of the State's argument—that Arnold resided in the house at 127 Quail Trail, and thus had constructive possession of the drugs and paraphernalia found there.

The motion for new trial was heard on December 6, 2018. The State objected to the motion on grounds that counsel's tactical choice to limit questions on cross-examination was not a valid ground for a motion for new trial under La. C. Cr. P. art. 851(B). The State maintained that Richardson's testimony was restricted only to prevent any other crimes evidence or any other prejudicial evidence from being disclosed during her testimony.

The defense maintained that the fairness of the trial was undermined when Richardson was allowed to testify only that she knew Arnold through her employer. The defense contended that its ability to effectively cross-examine her about the basis and reliability of her knowledge was impeded.

The defense called Nicole Mitchell and Waymon Clark, Richardson's supervisors at the Department of Probation and Parole, who testified at the hearing that officers are required to wear their uniforms when on duty. Richardson testified at the hearing that she was Arnold's probation and parole officer for a brief period and that the assistant district attorney had advised her not to wear her uniform shirt when testifying before the jury in this case because it would prejudice the defendant.

Judge McCartney found that no contemporaneous objection was made before or during Richardson's testimony. Judge McCartney further noted that even absent Richardson's testimony, Meza gave credible testimony that

13

Arnold lived with her and they used and sold methamphetamine. Judge McCartney denied the motion for new trial. Arnold waived the delay for sentencing, so Judge McCartney proceeded with the sentencing hearing.

Judge McCartney stated that she had reviewed Arnold's presentence investigation report and then recited the facts of the case on the record. Judge McCartney questioned Arnold and determined that he was 53 years old, divorced, had two children, and earned his G.E.D. Judge McCartney noted that Arnold had reported methamphetamine use and that he had completed a substance abuse program. Judge McCartney observed that in addition to numerous misdemeanor convictions, Arnold had six prior felony convictions, from 1981-2017, for attempted simple burglary, felony theft, conspiracy to manufacture methamphetamine, possession of Schedule II Controlled Dangerous Substance, possession of methamphetamine, and possession of a Schedule I and Schedule II Controlled Dangerous Substance with the intent to distribute.

Judge McCartney noted that the applicable penalty range for Arnold's conviction was imprisonment for 2-30 years at hard labor. Judge McCartney found that Arnold's criminal history reflected a pattern of drug offenses, and any lesser sentence would deprecate the seriousness of the offense. Judge McCartney sentenced Arnold to serve 20 years' imprisonment at hard labor, to run concurrently with his sentence in Caddo Parish, Docket No. 334,509, and with credit for time already served. Judge McCartney advised Arnold of his right to appeal and the time delays to seek post-conviction relief.

On December 14, 2018, Arnold filed a motion to reconsider sentence, asking Judge McCartney to reconsider the imposed sentence. Arnold asserted that, in light of his long-term substance abuse, the sentence imposed

14

was harsh and excessive. Judge McCartney denied the motion on December 17, 2018.

Arnold moved to appeal his conviction and sentence on December 14, 2018. The motion was granted on December 17, 2018.

## DISCUSSION

### *Insufficient Evidence*

First, Arnold argues that the State failed to present sufficient evidence to support the verdict for a conviction of possession with the intent to distribute. He contends that the State's case hinges on the testimony of Meza, Richardson, and Agent Williamson that they knew Arnold resided at the Quail Trail address where the methamphetamine and drug paraphernalia were found. Arnold asserts that Richardson's testimony was not sufficient to establish that fact because no testimony was provided to explain how she knew, through her employment, that Arnold resided there. Arnold also asserts that Williamson's testimony that he observed an envelope in the master bedroom addressed to him was insufficient to establish that he was residing there. Arnold argues that Meza's testimony was completely unreliable and not credible given her contradictory statements to police and at trial, and because there was a lack of physical evidence at the home to corroborate her testimony. Arnold argues that a review of the record reveals suspicious, conflicting, and inadequate testimony by the State's witnesses, and the evidence presented at trial was simply insufficient to sustain the conviction.

The State argues that Meza's testimony was sufficient to support Arnold's conviction by establishing that the drugs seized at their residence at 127 Quail Trail belonged to both of them because they both used and sold

drugs. The State contends that testimony by Richardson, Agent Williamson, and Agent Atkins all corroborated Meza's testimony. Richardson knew and saw that Arnold lived there, and Agents Williamson and Atkins observed the envelope in the master bedroom addressed to Arnold at that address.

The State also points out that its expert witness, Carl Townley, opined that the circumstances indicated that Arnold possessed the methamphetamine with the intent to distribute based upon the drugs found packaged in multiple bags, the two sets of digital scales, and the large number of empty bags found, all circumstances common to distribution. The State also notes that Arnold's attempt to flee, rather than turn himself in, was an indicator of his guilty knowledge.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the case in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Steines*, 51,698 (La. App. 2 Cir. 11/15/17), 245 So. 3d 224, *writ denied*, 17-2174 (La. 10/8/18), 253 So. 3d 797.

This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *Steines, supra*. The appellate court does not assess the credibility of witnesses or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Dale*, 50,195 (La. App. 2 Cir. 11/18/15), 180 So. 3d 528, *writ denied*, 15-

2291 (La. 4/4/16), 190 So. 3d 1203. A reviewing court affords great deference to a trial court's decision to accept or reject the testimony of a witness in whole or in part. *Steines, supra.* Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Lattin*, 52,127 (La. App. 2 Cir. 9/26/18), 256 So. 3d 484.

Direct evidence provides proof of the existence of a fact, for example, a witness' testimony that he saw or heard something. *State v. Lilly*, 468 So. 2d 1154 (La. 1985); *State v. Coleman*, 52,074 (La. App. 2 Cir. 11/14/18), 259 So. 3d 1203. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Mingo*, 51,647 (La. App. 2 Cir. 9/27/17), 244 So. 3d 629, *writ denied*, 17-1894 (La. 6/1/18), 243 So. 3d 1064. If a case rests essentially upon circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; *Mingo, supra.*

The Jackson standard is applicable in cases involving both direct and circumstantial evidence. *State v. Mathis*, 52,500 (La. App. 2 Cir. 1/16/19), 263 So. 3d 613. When the direct evidence is viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983); *Steines, supra.*

At the time of Arnold's offense, on July 8, 2016, La. R.S. 40:967(A)(1) provided that it was unlawful to possess a Schedule II

controlled dangerous substance, methamphetamine, with the intent to distribute. At that time, the penalty for a conviction for possession of methamphetamine with intent to distribute was imprisonment at hard labor for 2-30 years, with an optional fine of no more than $50,000. La. R.S. 40:967(B)(1).

To convict a defendant of possession of a controlled dangerous substance with intent to distribute, the State must prove beyond a reasonable doubt that he knowingly or intentionally possessed the contraband and that he did so with the intent to distribute it. *State v. Simon*, 51,778 (La. App. 2 Cir. 1/10/18), 245 So. 3d 1149, *writ denied*, 2018-0283 (La. 11/5/18), 255 So. 3d 1052. Intent to distribute a controlled dangerous substance is a specific intent crime. *Id.* Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). La. R.S. 14:10(1).

Intent to distribute illegal drugs may be established by proving circumstances surrounding the defendant's possession which give rise to reasonable inferences of intent to distribute. *State v. Simon, supra*. The State need not prove the defendant actually possessed the drugs, as evidence of constructive possession is sufficient. *Id.* Constructive possession is established by evidence that the drugs were within the defendant's dominion and control and that the defendant had knowledge of its presence. *Id.* Guilty knowledge is an essential element of possession of contraband and can be inferred from the circumstances. *State v. Toups*, 01-1875 (La. 10/15/02), 833 So. 2d 910; *State v. Simon, supra.*

Whether a defendant exercised dominion and control is based on factors such as the defendant's knowledge that drugs were in the area; the defendant's relationship with other persons found in actual possession; the defendant's access to the area where the drugs were found; evidence of drug paraphernalia or of recent drug use; and the defendant's physical proximity to the drugs. S*tate v. Toups, supra; State v. Simon, supra.*

Five factors are used to determine whether circumstantial evidence is sufficient to prove intent to distribute a controlled dangerous substance:

(1)     did the defendant distribute or attempt to distribute the drug;

(2)     was the drug in a form usually associated with distribution;

(3)     does the amount of drug create an inference of intent to distribute;

(4)     did testimony establish that the amount of drugs found in the defendant's possession was inconsistent with personal use; and

(5)     was there any other evidence of intent to distribute, such as scales or packaging materials.

*State v. Simon, supra.*

The State had the burden to provide evidence that Arnold had dominion and control over the drugs because he knew the drugs and drug paraphernalia were present at the Quail Trail home and he had access to them. Due to Arnold's absence during the execution of the search warrant, the State relied upon testimony of Meza that Arnold lived with her in the Quail Trail residence and they used and sold drugs together. The testimony by the agents executing the search warrant that they observed men's clothing in the home and an envelope addressed to Arnold in the bedroom where the drugs were located, was cumulative to Meza's testimony. Considering the

19

totality of this evidence, there was sufficient proof for the jury to have reasonably concluded that Arnold was living in the home and had constructive possession of the methamphetamine.

Meza testified that she and Arnold used and sold the drugs that were found in a form common for distribution. Expert testimony by Townley opined that the two sets of scales, plus the large number of unused bags for packaging, indicated specific intent to distribute. Townley also testified that the amount of drugs could have been for personal use or distribution, depending on a person's tolerance. He stated that the paraphernalia indicated use by the inhabitants but also could indicate use by their customers when they came to purchase. Meza's testimony confirmed that the customers would use the drugs when they came for purchases. Meza's testimony, if found to be credible by the jury, was sufficient to prove that Anthony lived at the home, possessed the drugs, and intended to distribute the drugs.

After viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. This assignment is without merit.

*Envelope*

Arnold asserts that allowing the officers' testimonies regarding the envelope addressed to him was a violation of his Sixth Amendment confrontation right because the sender of the letter was not called to testify, thus, Arnold's attorney could not conduct cross-examination. Arnold further argues that the error was not harmless because the letter's purpose was to establish an essential element of the case – that Arnold lived at the Quail

20

Trail home which meant he had constructive possession of the drugs and drug paraphernalia.

The State disputes that Arnold's Sixth Amendment confrontation right was violated because the officers were subjected to cross-examination and the envelope was not created in anticipation of trial or to aid in the police investigation and therefore was not testimonial in nature. The State further argues that the officers only testified as to their observations of the envelope during the execution of the search warrant and not about the validity of its contents thus the testimony was not subject to the hearsay exclusion.

The accused in a criminal prosecution has the right to confront and cross-examine witnesses against him in order to test their credibility and the truthfulness of their testimony. U.S.C.A. Const. Amend. 6; La. Const. art. I, §16. The Confrontation Clause applies to "testimonial" statements. *State v. Mullins*, 14-2260 (La. 1/27/16), 188 So. 3d 164. A document created solely for an "evidentiary purpose," made in aid of a police investigation or to provide evidence at trial, is testimonial. *Id.*[6] A statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial. *Ohio v. Clark*, 135 S. Ct. 2173, 192 L. Ed. 2d 306 (2015).

In *Mullins*, the State's expert testified regarding the results of the victim's IQ test, which he did not administer himself. The victim's IQ was

---

[6] In *Mullins*, the Louisiana Supreme Court gave these examples of testimonial statements: In the plurality opinion, *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009), four justices held that certificates verifying that bags of powder were cocaine were testimonial because they were created for the primary purpose of providing evidence at trial. *Melendez–Diaz*, 557 U.S. at 310–11, 129 S. Ct. at 2531–32. In *Bullcoming v. New Mexico*, 564 U.S. 647, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011), five justices found that a formal laboratory certificate identifying a defendant's blood alcohol level was testimonial and, therefore, not admissible without the testimony of the analyst who had conducted the testing, because it was created for the purpose of aiding in a police investigation.

an essential element of the crime, the testing was done after Mullins was identified, and its primary purpose was to provide evidence at Mullin's trial. The Louisiana Supreme Court held that the IQ results were testimonial in nature and, therefore, the letter containing the results was inadmissible without the testimony of the technician who administered and graded the test. The court found that the letter was admitted in error.

When a statement has no primary purpose as a testimonial statement, the admissibility of the statement is determined by state and federal rules of evidence, not the Confrontation Clause, because the Confrontation Clause does not apply to non-testimonial statements. *Ohio v. Clark*, *supra*; *Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006); *State v. Hugle*, 11-1121 (La. App. 4 Cir. 11/7/12), 104 So. 3d 598, *writ denied*, 12-2721 (La. 6/14/13), 118 So. 3d 1079.

"Hearsay" is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(C). Paragraph C makes clear that a nonassertive use (to prove anything other than the truth of the out-of-court statement) is not hearsay. La. C.E. art. 801, Comment to Article 801(C). The value of an out-of-court statement offered for a purpose other than to establish the truth of the matter asserted does not depend on the credibility of the out-of-court declarant, so the hearsay exclusion would not apply. *State v. Hugle*, *supra*. For example, where an investigating officer testifies concerning events leading to the arrest of a defendant, statements are not hearsay if not offered for the truth of the matter asserted, but merely to explain the officer's actions. *State v. Brown*, 52,266 (La. App. 2 Cir. 9/26/18), 256 So. 3d 431, *writ denied*, 18-1797 (La. 3/25/19), 267 So. 3d

22

597. In other words, where the officer does not testify with regard to the substance of what another person told him, but with regard to what he did in response to that information, the testimony is not considered hearsay. *State v. Lloyd*, 48,914 (La. App. 2 Cir. 1/14/15), 161 So. 3d 879, *writ denied*, 2015-0307 (La. 11/30/15), 184 So. 3d 33, *cert. denied*, 137 S. Ct. 227, 196 L. Ed. 2d 175 (2016).

However, the fact that an officer acted on information obtained during the investigation may not be used as an indirect method of bringing before the jury the substance of the out-of-court assertions of the defendant's guilt that would otherwise be barred by the hearsay rule. *State v. Broadway*, 1996-2659 (La. 10/19/99), 753 So. 2d 801, *cert. denied*, 529 U.S. 1056, 120 S. Ct. 1562, 146 L. Ed. 2d 466 (2000). Nevertheless, the erroneous admission of hearsay evidence does not require a reversal of the defendant's conviction if the error is harmless beyond a reasonable doubt. Reversal is mandated only when there is a reasonable possibility that the hearsay evidence might have contributed to the verdict. *State v. Wille*, 559 So.2d 1321 (La. 1990).

In *State v. Jones*, 607 So. 2d 828 (La. App. 1 Cir. 1992), *writ denied*, 612 So. 2d 79 (La. 1993), an officer testified that he had seen a document, not introduced into evidence, that indicated funds were received by the victim's wife. Overruling the defendant's objection, the court held the testimony was not hearsay because the officer only testified that he had seen the document. The testimony was allowed for its assertive value that the document existed, and not as proof to the truth of the funds received. *Id.*

Possession is an essential element of the offense of possession with the intent to distribute. La. R.S. 40:967(A). Therefore, Arnold's

constructive possession of the methamphetamine was essential to the State's case. As noted above, since the envelope was not created to serve as evidence at trial or assist in the police investigation, the officers' testimony about their observations of it was not testimonial, and therefore did not fall under the Confrontation Clause. Testimony about the envelope does not constitute hearsay because it was not offered as proof of the matter asserted. The testimony about the envelope was a statement about what the officers observed during the execution of the search warrant and not about what the envelope contained.

Likewise, because the envelope was not presented as direct evidence that Arnold lived there, there was no need for authentication or identification of the envelope in order for it to be deemed admissible. The envelope found in the master bedroom was circumstantial evidence that Arnold received mail at the Quail Trail residence where the methamphetamine and drug paraphernalia were located. The officers' testimonies about the envelope were in relation to their process of investigation. The envelope was not a direct assertion of Arnold's possession with the intent to distribute.

Additionally, even if the testimony regarding the envelope was to be considered inadmissible hearsay, the admission of the testimony was harmless. Richardson and Meza both testified that they had personal knowledge that Arnold lived at the Quail Trail address. This testimonial evidence was sufficient, without the testimony regarding the envelope, for the jury to find beyond a reasonable doubt that Arnold resided at the Quail Trail address.

Arnold fails to show that the trial court erred in admitting the testimony regarding the envelope. This assignment is without merit.

24

*Recusal*

Arnold argues Judge McCartney should have recused herself in this case based on her ruling allowing Richardson to testify. Arnold complains that the trial court failed to conduct a *Prieur* hearing to determine if Richardson should be allowed to testify because as Arnold's probation and parole officer, her testimony would introduce other crimes evidence that would unfairly prejudice Arnold. However, the record shows that the defense asked the State to move for the hearing and the State declined because the State was not offering other crimes evidence. Arnold asserts that the motion to recuse was based on the court's failure to conduct a *Prieur* hearing after Arnold requested it. However, the record shows that the motion to recuse was based on the court's ruling that Donna Richardson could testify that she knew Arnold lived at the Quail Trail home "through her employment," and Arnold's complaint that this precluded his defense attorney from effectively cross-examining Richardson.

The State argues that the motion to recuse was correctly denied because the motion was untimely filed after the jury had rendered its verdict, in violation of La. C. Cr. P. art. 674 and because Arnold failed to provide a legal basis to support the motion, in accordance with La. C. Cr. P. art. 671. The State contends that Donna Richardson's testimony that she knew Arnold through her employment was not a valid basis for the judge's recusal.

As noted previously, a motion to recuse should be filed prior to the commencement of trial or immediately after the party discovers the facts constituting a valid grounds for recusal under La. C. Cr. P. art. 671, but in any event prior to the verdict or judgment. La. C. Cr. P. art. 674.

The issue of Richardson's testimony arose pre-trial. Any complaint that the trial court should have recused herself should have been filed before trial started because Arnold was already aware of the dilemma. Arnold's November 2018 motion, filed months after the July verdict, was untimely under La. C. Cr. P. art. 674, and did not state a valid ground for recusal under La. C. Cr. P. art. 671. There is no showing here that the trial court was biased, prejudiced, or personally interested in this case, or was unable to conduct a fair and impartial trial. Arnold's attorney did not file a pre-trial motion to restrict or exclude Richardson's expected testimony. If Arnold disagreed with the court's pre-trial ruling allowing Richardson to testify in that manner, Arnold could have sought supervisory review. Furthermore, Arnold's attorney did not raise a contemporaneous objection before or during Richardson's testimony.

Arnold failed to show that the trial court erred in denying the motion to recuse. This assignment is without merit.

*New Trial*

Arnold argues that he should have been granted a new trial because no *Prieur* hearing was held regarding Richardson's testimony.

The State asserts that the prosecution made no attempt to elicit evidence of prior crimes and so no *Prieur* hearing was necessary. The State argues that the purpose of Richardson's testimony as a "civilian" and not as a parole officer was intended to establish that she knew Arnold and believed him to live at 127 Quail Trail. The State further notes that having Donna Richardson testify without her uniform shirt for the Probation and Parole Department was only to prevent any prejudice to Arnold.

La. C.E. art. 404(B)(1) states:

26

Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

Generally, evidence of other acts of misconduct is inadmissible because it creates the risk that the defendant will be convicted of the present offense simply because the unrelated evidence establishes him or her as a "bad person." La. C.E. art. 404(B)(1); *State v. Jackson*, 625 So. 2d 146 (La. 1993). This rule of exclusion stems from the "substantial risk of grave prejudice to the defendant" from the introduction of evidence regarding his unrelated criminal acts. *State v. Prieur*, 277 So. 2d 126 (La. 1973).

An irregularity or error cannot be availed of after the verdict unless it was objected to at the time of occurrence. La. C. Cr. P. art. 841. The contemporaneous objection rule prevents "a defendant from gambling for a favorable verdict and then, upon conviction, resorting to appeal on errors which either could have been avoided or corrected at the time or should have put an immediate halt to the proceedings." *State v. Mansfield*, 50,426 (La. App. 2 Cir. 2/24/16), 190 So. 3d 322, citing *State v. Taylor*, 93–2201 (La. 2/28/96), 669 So. 2d 364, *cert. denied*, 519 U.S. 860, 117 S. Ct. 162, 136 L. Ed. 2d 106 (1996).

A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused. La. C. Cr. P. art. 921.

27

Confrontation errors are subject to a harmless error analysis, where the court determines whether the error was harmless beyond a reasonable doubt. *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986); *State v. Robinson*, 01-0273 (La. 05/17/02), 817 So. 2d 1131; *State v. Johnson*, 51,652 (La. App. 2 Cir. 9/27/17), 244 So. 3d 617, *writs denied,* 2017-1792 (La. 5/25/18), 242 So. 3d 1230, and 2017-1325 (La. 10/29/18), 254 So. 3d 699. Factors to be considered include the importance of the witness' testimony in the State's case, whether the testimony was cumulative, the presence or absence of corroborating or contradicting testimony, the extent of cross-examination otherwise permitted, and the strength of the State's case. *State v. Johnson, supra*. The verdict may stand if the reviewing court determines that the guilty verdict rendered in the particular trial is surely unattributable to the error. *State v. Grady*, 47,622 (La. App. 2 Cir. 1/16/13), 108 So. 3d 845, *writ denied*, 2013-0294 (La. 10/4/13), 122 So. 3d 551.

On appeal, Arnold asserts that he was entitled to a new trial because a *Prieur* hearing was not held, but fails to show the basis for this claim since the State did not introduce any evidence requiring such a hearing. Arnold asserts that cross-examination was constrained, in violation of his Confrontation Clause right, because the trial court's ruling limited Richardson's testimony regarding the basis of her knowledge to "through her employer."

Essentially, this is an argument that the in-chambers ruling by Judge McCartney impermissibly impeded Arnold's right to conduct his defense, his right to attack the credibility of a witness, and his right to challenge the probative value of a witness' testimony. Here, Arnold was not able to

28

challenge Richardson's credibility or question the basis for her knowledge and testimony that Arnold resided at that residence, which was used to support a material element of the State's case that Arnold had constructive possession of the drugs and paraphernalia. The basis of Richardson's knowledge was certainly relevant to the question of its reliability.

However, Arnold failed to preserve these issues for appeal. Upon learning of this dilemma, the defense did not seek supervisory review of the ruling, did not file a pre-trial motion challenging the admissibility of Richardson's testimony under the new restriction, and did not raise a contemporaneous objection at trial.

Even assuming the trial court erred in its ruling that Richardson only had to state that her knowledge was through her employer, which may have impeded the ability to ask her certain questions, the error was harmless. Richardson's testimony about Arnold's living status was cumulative of other testimony and corroborated Meza's testimony that Arnold lived with her. The defense was not otherwise restricted from cross-examining Richardson to determine her credibility. Meza's testimony, if believed by the jury, was sufficient to prove that Arnold lived at the 127 Quail Trail home.

Ultimately, Arnold fails to show that the trial court erred in denying the motion for new trial. This assignment is without merit.

## CONCLUSION

For the foregoing reasons, we affirm Steven Arnold's conviction and sentence.

**AFFIRMED.**