COX, J.
The defendant, Ulrich "Ric" Adam Steines ("Steines"), was convicted after a bench trial of one count of pornography involving juveniles, in violation of La. R.S. 14:81.1, and two counts of aggravated incest, in violation of La. R.S. 14:78.1. On *226 count one, Steines was sentenced to 10 years at hard labor, without the benefit of probation, parole, or suspension of sentence. On each of counts two and three, Steines was sentenced to 45 years at hard labor, 25 years to be served without the benefit of probation, parole, or suspension of sentence. All sentences were ordered to be served consecutively. Steines filed motions for post-verdict judgment of acquittal and for a new trial, which were both denied. A motion to reconsider the sentence was timely filed, but withdrawn by defense counsel. Steines now appeals. For the following reasons, we affirm the convictions, vacate the sentences, and remand for further proceedings.
FACTS
In late summer of 2008, S.S. was 10 years old and was living with her grandfather (Steines), Steines's wife, and Steines's son, A.S. A.S. was 14 years old at the time and Steines was 53 years old. S.S. had been living with Steines at the request of her mother Odessa (Steines's daughter) since she was 10 months old and S.S. called Steines dad. Steines traveled with his employment and stayed several weeks of the month at the Economy Inn in Winnfield, Louisiana. Receipts showing his stays at the motel from June to mid-October 2008 were introduced into evidence during the trial. It is undisputed that S.S. stayed with Steines for several days at a time when he was at the motel.
In either late August or early September 2008, S.S. told a former wife of Steines that A.S. had touched her inappropriately on her breast and had kissed her. A report was made to the Department of Children and Family Services and an investigation followed. On September 15, 2008, and on two other occasions, Barrett McIntosh with DCFS, interviewed Steines. McIntosh testified at trial that the family underwent group and family counseling and that Steines's wife reported marital problems due to Steines's use of pornography. While the family's problems came to light around the allegations of A.S.'s conduct, the focus soon shifted to Steines.
During his first interview with McIntosh, Steines volunteered that he had showed S.S. how to put a condom on a banana because she was maturing and would soon be having sexual relations. Steines said he used the banana as a demonstration tool for S.S.'s education. During a second interview on October 16, 2008, McIntosh advised Steines that S.S. was going to be referred for sexual abuse testing. McIntosh testified at trial that Steines's tone changed and he became defensive, telling McIntosh that the test would be unreliable because S.S. used tampons instead of pads and had been "playing with herself." By the third conversation on October 18, 2008, McIntosh had concerns Steines was grooming S.S. for further sexual behavior and that Steines was attempting to manipulate the DCFS investigation.
On two occasions, October 16, 2008 and November 24, 2008, S.S. was interviewed by Jennifer Graves of the Children's Advocacy Center. Transcripts of both interviews were admitted into evidence at trial with no objection. In the first interview, S.S. described the incident in the motel with the condom and the banana. She stated that Steines told her that he needed to show her that because she was growing up. When asked if Steines had ever taken any pictures of her without her clothes on, S.S. replied, "I think one time, I'm not sure actually."
In her second interview with Ms. Graves, S.S. stated she had "lied about a few things" in her previous conversation with Ms. Graves because she was scared. S.S. then stated, "I did have another person *227 touch me and take pictures of me and video tape me and stuff like that." S.S. then stated that the person was "Ric Steines, who I now know don't live here anymore." Shortly after the allegations were made and the investigation began, Steines returned to his native Canada. The plane ticket was introduced into evidence at trial.
S.S. also told Ms. Graves that Steines touched her "lower private area" and "had stuck stuff at" her. This happened more than once at the motel and before at the house. The first time it occurred, S.S. was sleeping in Steines's bed at the motel and Steines "stuck his fingers" up S.S.'s vagina. S.S. told Ms. Graves that she pushed Steines away. S.S. also advised that "we went one more time and daddy forced me to put my fingers up myself and got butt naked and he videotaped me." When asked to explain, S.S. said, "I was at the motel one day and I was just lying in bed watching TV and he forced me to get up, take off all my clothes and he took off all his. And he videotaped me it really hurt." S.S. could not recall what the camera looked like. S.S. also stated that Steines grabbed her hand and made her touch his "lower part" and showed her a video of grown-ups having sex. S.S. told Ms. Graves that she had a friend who had experienced similar things with her stepfather. S.S. stated that hearing about her friend's experience had given S.S. the confidence to talk about it.
When asked, specifically, when the incidents took place, during the summer or during the school year, S.S. replied that she did not remember "any of the times," just what happened. S.S. also stated that Steines told her not to tell or he would do something, but she could not recall what he said he would do.
An arrest warrant was secured for Steines, but he had returned to Canada. It was not until 2014 that Steines was extradited to Winn Parish to face these charges. Officer Kelly Fannin of the Winn Parish Sheriff's Office testified that he arrested Steines on August 1, 2014.
S.S. testified that she lived in Caldwell Parish in the summer and fall of 2008 and that she would stay with Steines at the Economy Inn in Winnfield, Winn Parish, LA while he was working. S.S. stated that the incidents of abuse occurred at the motel. At trial, S.S. recounted the banana and condom incident and testified that Steines touched her vagina. She stated that Steines told her he would give her twenty dollars if she would get fully undressed. S.S. testified that "he used a camera to either record me or take pictures, I'm not really sure, um, of me doing stuff to myself.... he was naked at the time." S.S. confirmed that Steines told her to touch herself for the recording and that he told her she would likely be having sex by the time she was 12 years old. S.S. stated that the touching happened numerous times and that Steines showed her pornography on his computer. When asked why she was testifying, S.S. stated, "I need justice and I need closure in my life. It's been really hard since it, um, it's-it's really hard to just be in a room with another, uh man, and it's really hard just to-to just have those memories in my head without anything being done."
During cross-examination, S.S. admitted that she could not get into the mind of "her ten-year old self" and that eight years can affect one's memory. S.S. agreed that the events happened "late summer."
Dr. David Williams is an expert in psychology. DCFS referred the Steines family to him in order to evaluate A.S. Dr. Williams testified regarding group and family therapy sessions. Dr. Williams testified that he acted to have A.S. and S.S. removed from the family unit based on his conclusion regarding the inappropriate *228 grooming behavior (the banana and condom incident) with a 10-year-old child by hand delivering a letter to DCFS. Dr. Williams stated he was concerned the child was being "softened up" for more sexual behavior. Dr. Williams testified that he wrote a letter, which he personally walked over to child protective services, expressing his concerns about the children in this family. Dr. Williams stated that "the kids needed to be out of there, [S.S.] especially." His opinion and actions were based on his experience as a counseling psychologist working with sexual offenders and victims.
Dr. John Simoneaux, an expert in psychology, testified at trial that he evaluated S.S. on January 29, 2009. He was referred by DCFS to "validate sexual enticement and lack of supervision relative to her grandfather." Dr. Simoneaux reviewed the two statements S.S. gave to Ms. Graves and personally interviewed S.S. Dr. Simoneaux testified that it was normal for young victims to make additional revelations over time rather than all at once. He also explained that it was not unusual to see differing statements from a child victim. Defense counsel objected, arguing that the answer would be an impermissible opinion on the credibility of S.S. and the validity of her claim under State v. Foret, infra . The trial court allowed Dr. Simoneaux to testify as to the common behaviors of victims in general, but stated, "I'm gonna keep an eyed-eye on the rest. Let, uh, I believe [defense counsel] is correct when it gets down to the-is she telling the truth or not, that's not [Dr. Simoneaux's] job.... That's my job." Later in his testimony, Dr. Simoneaux was asked if he made a recommendation on what to do following his evaluations. Again, defense counsel objected arguing the question called for an opinion on the validity of S.S.'s claim. The trial court agreed and the district attorney withdrew the question.
The state rested and Steines testified on his own behalf. Steines testified that he moved to Louisiana from Canada to support his family. He stated that he agreed to raise S.S. because his daughter, S.S.'s mother, was having problems. Steines denied any inappropriate conduct with S.S. He explained the banana and condom incident by stating that is how safe sex is taught in Canadian schools. He testified he was "scared" because S.S. and her friends were talking about boys so he decided to educate her. Steines denied that he viewed pornography.
The trial judge found Steines guilty as charged, specifically stating that he found S.S. to be credible and Steines to be completely lacking in credibility. Following sentencing, Steines appealed.
DISCUSSION
I. Insufficient Evidence
This Court will address Steines's second assignment of error first. Steines argues the State failed to prove every element of each charge beyond a reasonable doubt. He argues the aggravated incest charges are based solely on S.S.'s allegations, which Steines describes as inconsistent and "hazy." Steines argues the State failed to meet its burden of proof on the pornography involving juveniles charge because S.S. could not identify the device used to video her and no actual video was produced.
When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal if a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could not reasonably conclude that all *229 of the elements of the offense have been proved beyond a reasonable doubt. Hudson v. Louisiana , 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed. 2d 30 (1981) ; Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979) ; State v. Dennis , 46,471 (La. App. 2 Cir. 9/21/11), 72 So.3d 968, writ denied , 2011-2365 (La. 5/18/12), 89 So.3d 1189.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the case in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson, supra ; State v. Tate , 01-1658 (La. 5/20/03), 851 So.2d 921, cert. denied , 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed. 2d 248 (2004) ; State v. Neal , 51,574 (La. App. 2 Cir. 5/2/17), 219 So.3d 482. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. Neal, supra .
An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is viewed, the facts established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton , 436 So.2d 471 (La. 1983) ; State v. Freeman , 50,282 (La. App. 2 Cir. 4/13/16), 194 So.3d 1.
The appellate court does not assess the credibility of witnesses or reweigh the evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So.2d 442 ; State v. Bass , 51,411 (La. App. 2 Cir 6/21/17), 223 So.3d 1242. A reviewing court affords great deference to a trial court's decision to accept or reject the testimony of a witness in whole or in part. Bass, supra .
Under the Jackson rationale, when the defendant asserts that he was not the perpetrator, or remains silent, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Long , 408 So.2d 1221 (La. 1982) ; Bass, supra . It is the province of the fact finder to resolve conflicting inferences from the evidence. In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness-if believed by the trier of fact-is sufficient to support the requisite factual conclusion. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence. This is equally applicable to the testimony of sexual assault victims. Bass, supra.
La. R.S. 14:81.1, Pornography involving juveniles, provided in part:
A. Pornography involving juveniles is any of the following:
(1) The photographing, videotaping, filming, or otherwise reproducing visually of any sexual performance involving a child under the age of seventeen.
(2) The solicitation, promotion, or coercion of any child under the age of seventeen for the purpose of photographing, videotaping, filming, or otherwise reproducing visually any sexual performance involving a child under the age of seventeen.
...
(4) The consent of a parent, legal guardian, or custodian of a child under the age of seventeen for the purpose of photographing, videotaping, filming, or otherwise reproducing visually any sexual performance involving the child.
There was sufficient evidence to support Steines's conviction of pornography *230 involving juveniles. S.S. gave her statement to Mrs. Graves when she was 10 years old and testified at trial. S.S. stated that in late summer of 2008, when she was 10 years old, Steines gave her twenty dollars and told her to undress. She stated Steines instructed her to put her fingers in her vagina. S.S. testified Steines was naked during this episode and had a camera pointed at her, either taking pictures or videoing her. S.S.'s testimony is sufficient to establish the requisite elements of pornography involving juveniles, i.e., that Steines photographed or videotaped a sexual performance of a child under the age of 17.
Medical, scientific, or physical evidence was not produced. Steines left the country for his native Canada before the investigation culminated. Ultimately, it was the trial court's decision to believe or not believe the testimony of S.S. The trial court stated during the rendering of its verdict that it found S.S. to be "totally credible." The trial court further stated it believed S.S. when she testified that Steines "took pictures or videoed her in a state of nudity." The trial court's decision was based on credibility, and will not be disturbed on appeal.
La. R.S. 14:78.1, Aggravated incest, provided in pertinent part:
A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.
B. The following are prohibited acts under this Section:
(1) Sexual intercourse, sexual battery, second degree sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile or a person with a physical or mental disability, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.
(2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.
There was sufficient evidence to support Steines's conviction of aggravated incest. S.S. gave her statement to Mrs. Graves when she was 10 years old and testified at trial. S.S. testified Steines touched her vagina numerous times and he "stuck things up" her, including his fingers and a piece of sausage. She also stated Steines grabbed her hand and forced her to touch his penis. Medical, scientific, or physical evidence was not produced.
S.S.'s testimony is sufficient to establish the requisite elements of aggravated incest, i.e., that Steines engaged in indecent sexual behavior with his biological grandchild, who was under the age of 18. As stated previously, it was the trial court's decision of whether or not to believe the testimony of S.S. The trial court stated it believed the testimony of S.S that she was inappropriately touched by Steines. The only evidence to the contrary was the testimony of Steines himself. The trial court did not find Steines to be credible. The trial court's decision was based on credibility and will not be disturbed on appeal. This assignment is without merit.
II. Expert Testimony
In his first assignment of error, Steines argues the trial court erred in allowing purported expert testimony on the reporting *231 of alleged sexual abuse. Steines argues the only issue in the case was the credibility of S.S. because she changed her story when making allegations. Steines argues the trial court allowed the expert witnesses to testify improperly as to their conclusions that S.S. had been sexually abused and was being groomed for more sexual abuse. Steines argues the experts' testimony concerned the credibility of S.S.'s allegations, which usurped the role of the judge as trier of fact.
In a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused. La. C.E. art. 704. Expert opinion testimony is inadmissible on the issue of credibility under La. C.E. art. 608. See Official Comment (e) to Article 702. As long as the expert limits his testimony to general characteristics that would explain delays in reporting, recantations, and omission of details, the testimony will not be a substitute for the credibility determination of the fact finder. The expert testimony is to provide a scientific perspective for the fact finder so it can evaluate the complainant's testimony for itself. State v. Foret , 628 So.2d 1116 (La. 1993).
In State v. Patrick , 513 So.2d 449 (La. App. 2 Cir. 1987), writ denied , 519 So.2d 140 (La. 1988), this Court explained the unique role of a psychologist's testimony in incest cases:
Psychologists explained that a child-victim of parental incest exhibits abnormal behavior traits and suffers great psychological harm. The testimony of the child is usually necessary to convict a father of the heinous crime of incest. Expert psychological testimony aids and enlightens the jury in this area of behavioral traits, an area which is beyond the understanding of the average lay person, and assists the jury in its search for truth.
Psychological expert testimony is admissible here because it assisted the jury's understanding of the behavior of a child who may have been the victim of parental incest, an area requiring "specialized knowledge." The facts of this case are inapposite to cases where the admissibility of expert testimony in an area of "common knowledge," such as eye-witness identification, is at issue. (citations omitted)
Dr. Simoneaux did not present impermissible testimony. Dr. Simoeaux's testimony was specialized knowledge regarding the general characteristics of assault victims. Dr. Williams testified about the reasons he reported the suspected child abuse. Neither psychologist testified to the credibility of S.S. The trial court stated that the experts could not testify as to the credibility of S.S., as that was the trial court's "job." The trial court further stated that no testimony would be regarded as bearing on credibility. Both expert testimonies were permissible. This assignment is without merit.
III. Sentencing Delay
In his third assignment of error, Steines argues the trial court erred in proceeding to sentencing immediately after the denial of the motion for a new trial where there was no waiver of the 24-hour sentencing delay. He argues he was prejudiced by the trial court's failure to observe the 24-hour sentencing delay required in La. C. Cr. P. art. 873. Steines states that his sentencing attorney was not the same attorney who represented him at trial and the lack of delay precluded his adequate preparation for sentencing. Further, because he is challenging his sentence on appeal, Steines argues that his sentence should be vacated for failure to observe the delay and the *232 matter remanded so the sentence can be legally imposed.
La. C. Cr. P. art 873 states:
If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
Article 873 uses mandatory language which requires a 24-hour delay between the overruling of a motion for a new trial and sentencing. The Louisiana Supreme Court stated in State v. Augustine , 555 So.2d 1331 (La. 1990) :
These statutorily mandated delays have been respected in a long line of opinions[.]
" Article 873 uses mandatory language in requiring that twenty-four hours elapse between the overruling of a motion for new trial and sentencing when the defendant is convicted of a felony. ... The legislature in effect has said that a failure to comply with article 873 in the absence of an express waiver by the defendant affects substantial rights." State v. White , 483 So.2d 1005 (La.1986), Dennis, J., dissenting in part.
Only the majority opinion in State v. White , 404 So.2d 1202 (La.1981) can possibly be considered at variance with this rule. But even that case is largely distinguishable from this one. We held in White (over the protest of two dissenting justices) that the statutory mandate of the 24-hour delay was not so imperative as to require a resentencing where the defendant could not show that he suffered prejudice from the violation. State v. White , however, was before us on an errors patent review (no assignments of error urged by the defendant on this issue), and the defendant was not challenging the penalty imposed.
In the case before us, Augustine did not expressly waive the delay as required by art. 873 (nor did he plead guilty); and he does challenge the penalty on this appeal.
In State v. Kisack , 2016-0797 (La. 10/18/17), 236 So.3d 1201, 2017 WL 4681356, sentencing occurred almost immediately after the trial court denied the defendant's motion for a new trial. Although the defense attorney participated in the sentencing hearing, an express waiver of the 24-hour delay did not occur. The Louisiana Supreme Court stated the participation in the sentencing hearing may be considered an implicit waiver, but such implicit waivers are not authorized by the criminal code. The defendant, who faced a sentencing range of 20 years to life, received a life sentence. The Louisiana Supreme Court stated, "...it is difficult to conclude the error is harmless."
In this case, the trial court denied Steines's motion for a new trial and sentenced Steines on the same day. After denying Steines's motion for a new trial, the trial court did not wait the required 24-hours before imposing his sentence and nothing in the record indicates, as required by Article 873, that Steines expressly waived the delay. Steines's sentence equated to 100 years in prison, which he challenges on appeal. Further, Steines did not plead guilty. In accordance with Augustine and Kisack , we are required in this case to vacate the sentences and remand for resentencing on these grounds.
IV. Excessive Sentence
In his fourth assignment of error, Steines argues the trial court imposed excessive sentences on each count, which were not warranted by the offenses or the *233 circumstances of a first offender. Under the facts of this case, we do not believe the sentences are excessive. However, because we are vacating Steines's sentences and remanding for compliance with La. C. Cr. P. art. 873, we pretermit this assignment of error.
Errors Patent
A review of the record reveals that the trial court did not properly inform Steines of the sex offender registration and notification requirements outlined in La. R.S. 15:543. Pornography involving juveniles and aggravated incest[1] are defined as sex offenses under La. R.S. 15:541. La R.S. 15:543 requires the trial court to notify a defendant convicted of a sex offense, in writing, of the registration and notification requirements and that an entry be made in the court minutes, stating that the written notification was provided to the defendant.
The trial court did not provide Steines with either written or oral notification of the sex offender requirements. There is no indication in the record as to whether Steines is aware of the sex offender registration requirements. This matter is remanded for the purpose of providing the appropriate written notice to Steines of the sex offender registration requirements and for the filing of written proof of such notice into the record of the proceedings.
La. R.S. 14:81.1(E)(3) states, "Any parent, legal guardian, or custodian of a child who consents to the participation of the child in pornography involving juveniles shall be fined not more than ten thousand dollars[.]" When sentencing Steines for pornography involving juveniles, the trial court failed to impose the mandatory fine of not more than $10,000.00, making the sentence illegally lenient. La. C. Cr. P. art. 882(A) provides that an illegally lenient sentence may be corrected at any time by an appellate court on review. However, this Court is not required to take such action. State v. Wesley , 49,438 (La. App. 2 Cir. 2/26/15), 161 So.3d 1039, writ not considered , 15-1096 (La. 3/14/16), 188 So.3d 1065. Since this Court is not required to take action and Steines is not prejudiced in any way by the failure to impose the mandatory fine, we decline to impose the fine.
CONCLUSION
For the reasons previously stated, we affirm Steines's convictions. Steines's sentences are vacated and remanded for proper sentencing due to the mandatory 24-hour waiting period not being followed by the court, as is required for sentencing pursuant to La. C. Cr. P. art. 873. The matter is remanded to the trial court with instructions to provide the defendant with appropriate written notice of his sex offender obligations in compliance with La. R.S. 15:543 and to file written proof thereof in the record.
CONVICTIONS AFFIRMED; SENTENCES VACATED; REMANDED FOR RESENTENCING.

In 2014, all references in Louisiana law to "aggravated incest" were changed to "aggravated crime against nature."