Judgment rendered September 27, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,268-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                                    Appellee

versus

JASON GARCIA                                          Appellant

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 222,290

Honorable Douglas Stinson, Judge

* * * * *

LOUISIANA APPELLATE PROJECT              Counsel for Appellant
By: Douglas Lee Harville

JASON GARCIA                             Pro Se

J. SCHUYLER MARVIN                       Counsel for Appellee
District Attorney

RICHARD RUSSELL RAY
JOSEPH CHANCELLOR NERREN
Assistant District Attorneys

* * * * *

Before PITMAN, COX, and HUNTER, JJ.

**COX, J.**

This case arises out of the Twenty-Sixth Judicial District Court, Bossier Parish, Louisiana. The defendant, Jason Garcia, was convicted by a unanimous jury of violating La. R.S. 14:42(A)(4), first degree rape when the victim is under the age of 13. Garcia now appeals his conviction. For the following reasons, Garcia's conviction and sentence are affirmed.

## FACTS

On July 6, 2020, a grand jury indicted Garcia for the first degree rape of J.H., who was born February 10, 2007. J.H. is the stepdaughter of Garcia.

The trial was held on May 10 and 11, 2022. Debra McKay, a Bossier Parish Sheriff's Office Detective, testified that she was called to Haughton Middle School on February 13, 2020, when it was reported that J.H. had been sexually abused. She stated that the abuse began when J.H. was four or five years old and the last date of abuse was February 7, 2020, when J.H. was 12 years old. Det. McKay testified that based on J.H.'s allegations, she interviewed Garcia.

Alex Person, the Director of Education and a forensic interviewer at the Gingerbread House Children's Advocacy Center, was accepted as an expert in child sexual abuse and forensic interviewing. Mrs. Person testified that she interviewed J.H., as well as her siblings, A.H., J.G., and M.G. During Mrs. Person's testimony, J.H.'s Gingerbread House interview was entered into evidence and played for the jury. Mrs. Person stated that J.H. was considered an active disclosure because she was ready to talk about what happened to her and the last abuse was recent. She testified that J.H. gave detailed information regarding the abuse.

Mrs. Person stated that after interviewing J.H., she interviewed J.H.'s brother, A.H. A.H.'s Gingerbread House video was played for the jury. Mrs. Person testified that A.H.'s interview corroborated J.H.'s statement that Garcia would call J.H. into his bedroom in the mornings before school. Mrs. Person stated that during his interview, A.H. told her that Garcia would call J.H. into his room to "hug" her and the other children were not called into the room.

Mrs. Person testified that she interviewed J.H.'s brother, J.G., and his Gingerbread House video was played for the jury. Mrs. Person stated that J.G. also corroborated that Garcia would "hug" J.H. in the mornings before school. Mrs. Person testified that J.G. stated he heard J.H. telling their mother what happened.

Mrs. Person stated that she interviewed J.H.'s sister, M.G., and M.G.'s Gingerbread House video was played for the jury. Mrs. Person testified that M.G.'s interview stood out because she "placed J.H. and herself in the room with their dad talking about hugging or cuddling or staying warm."

Jennifer Rodriguez, a child abuse pediatrician at the CARA Center[1] and Ochsner LSU Hospital, was called to testify. She stated that she has been doing evaluations of abused children for 23 years. Dr. Rodriguez was accepted as an expert in pediatrics with a specialty in child sexual abuse and medical forensic examinations. Dr. Rodriguez testified that she examined J.H. on February 14, 2020. She testified that when she was visiting with

_____

[1] The CARA Center is a children's advocacy center where children are brought for a physical examination when there is suspected abuse or neglect, including emotional abuse, physical abuse, and sexual abuse.

J.H., she asked her what three wishes she would make if she could; J.H. told Dr. Rodriguez that she would ask for a new house, her family not to worry about money, and for her stepfather to move out. Dr. Rodriguez stated that she inquired why J.H. wanted her stepfather to move out, and J.H. told her because of the things that he had done to her—the things she talked about at the Gingerbread House. She testified that when speaking with J.H., J.H. told her that she had experienced some bleeding, pain, and painful urination after her stepfather abused her.

Dr. Rodriguez testified that she was limited while performing the physical exam of J.H. because J.H. was anxious, which is not uncommon in children who have been through abuse. She stated that she did not find any redness, bleeding, bruising, or trauma while performing J.H.'s pelvic exam. She testified that those findings do not show whether J.H. was abused because the majority of children who have been sexually abused have normal exams.

J.H.'s mother, Carmen Herrera, testified that she and Garcia had been in a relationship since J.H. was one year old, and they have two children together. She stated that in early 2020, she would leave for work around 4:30 a.m. She testified that J.H. was not a bad child and did not get in trouble a lot. Ms. Herrera stated that J.H. told her that Garcia touched her legs, but Garcia denied touching J.H. when Ms. Herrera confronted him.

J.H.'s younger sister, M.G., who was ten years old at the time of trial, testified that J.H. and her father would spend time alone in his room in the mornings before school. She stated that this would occur a couple of times a week and sometimes the door would be closed.

J.H.'s younger brother, A.H., who was 14 years old at the time of trial, testified that Garcia is his stepfather. He testified that J.H. would be in Garcia's room every morning when his mother was not home. He stated that sometimes the door would be open, but if the door was closed and he tried to go in the room, Garcia would tell him to leave and close the door. He testified that if he ever questioned what was going on in the room, Garcia would say that "he was giving her hugs." A.H. stated that if he opened the door, he would see J.H. and Garcia in the bed and Garcia would be hugging J.H. from behind.

J.H.'s younger brother, J.G., who was 12 years old at the time of the trial, testified that Garcia is his father. He testified that J.H. would go into his father's room almost every morning when his mother was gone. He stated that the lights were turned off, the door was closed, and if he tried to enter the room, Garcia would tell him to leave. J.G. testified that he heard J.H. crying and telling their mother that Garcia was "touching her in places she didn't like." He stated that J.H. looked upset when she left Garcia's room.

J.H. testified that Garcia is her stepfather. She stated that Garcia began touching her inappropriately when she was four or five years old when they were "supposedly cuddling," and the last time he inappropriately touched her was a week before she turned 13 years old. She testified that when Garcia wanted her to come into his room, he called her on her phone. She stated that he would do this at four or five in the morning before everyone started waking up for school. J.H. testified that Garcia would ask her if she had her school clothes on because he usually would not touch her if she had them on; but on at least one occasion, he had her remove her

4

school clothes. She stated that once she arrived in his room, he would have her close the door and he would already be in the bed.

J.H. testified that she would have to lay in the bed with Garcia. She stated that Garcia would put his hand between her legs and rub her inner legs up to her vagina, put his body against hers, and put his penis inside her vagina, which she recalled as happening "a few times." She testified that Garcia would get his phone out, turn the flash on, and then start recording while he was touching her. She stated that he would tell her that he was going to upload the videos to Facebook. J.H. testified that Garcia threatened her to perform as he requested and not tell anyone by placing his hands on her throat once and told her "it would not end up good at all." She testified that she was afraid and scared.

J.H. testified that on the day she disclosed the abuse, her friend asked her what was wrong with her, and she told her friend that she was tired of what her stepfather was doing to her. Her friend notified the school counselor, who called the police. J.H. stated that she tried writing a letter to the school counselor once about what was happening to her, but Garcia found the letter in her bedroom table and tore it up. She confirmed that all of the abuse occurred while she was 12 years old and younger. She testified that she never spoke out about it until she could not imagine going through it any longer.

Garcia testified that J.H. has been a part of his life since she was one year old and he loves her. He stated that he would take his wife to work and call J.H. to wake up her siblings. He testified that because there was only one bathroom and the boys took showers in the mornings, the girls would come to his room to visit or lay on the bed and sleep a little longer. He

5

stated that sometimes both girls would be in there together or J.G. would come in there while A.H. was in the shower. He stated that A.H. did not come in his room much because he would just stay asleep longer or look at his phone.

Garcia stated that he worked in medical transportation and would usually be home until the kids left for school and would not get back home from work until after 5 p.m. He testified that he had a good relationship with J.H., but she would get upset when he discussed her grades with her and tell her she needed to pay closer attention at school. Garcia testified that J.H. was in special education classes at school and needed assistance with reading and comprehension. He stated that when J.H. told her mother that he was inappropriately touching her, it was after she had been grounded for breaking rules. He stated that he addressed it with J.H., asked J.H. if someone from school or the neighborhood had been touching her, and told her not to say things that were not true because it "can cause a lot of problems."

Garcia testified that the door to his bedroom was broken, did not have a lock, and only had to be pushed to open. He stated that the other bedrooms in the house only had curtains for a door. He testified that when J.H. would come in his room in the mornings, he would tell her to close the door so the light would not come in. Garcia denied making J.H. come in his room or touching her inappropriately.

Garcia testified that this whole situation has been a "nightmare" and makes him sad. He stated that it breaks his heart that he has not seen his children since this started. When asked if he had anything else he would like to say, he stated:

6

> I try to be a good husband and a … and a good father to all my kids and to my wife. You know, they're – they're my whole life. I would never do anything to hurt any of them. I did discipline them because I didn't want them to grow up, you know, ending up in jail or – or, you know, in trouble all the time causing problems. But I never hurt them. I never tried to – to, you know, to traumatize them or nothing like that. I never did anything sexual [to] either one of my daughters or my sons. I would never do that. That's not me. I wouldn't do that.

On cross-examination, Garcia denied telling the boys that they could not come in the room while J.H. was in there. Garcia stated that J.G. and A.H. were mistaken when they testified that Garcia would get mad when they walked in and Garcia was laying in the bed with J.H. He testified that J.H. made up all of the allegations against him. When asked why J.H. would make this up, he stated that she could have made it up when he grounded her, which was right before she told her mom. Garcia stated that she could have made it up when she told her friend because she was mad she would not be able to go to a school dance. He stated that she could not go to the dance because he could not take her. On cross-examination, he was asked whether he believed J.H., who is in special education classes, made up all the details of this story and stuck to them for two years. Garcia stated, "Yeah. I mean, that's what [J.H.] did[.]"

The jury returned a unanimous guilty verdict. The jury was polled and polling slips verify that the verdict was unanimous.

On July 28, 2022, the sentencing hearing was held. The trial court stated that the only mitigating factor was that Garcia is a first-time felony offender. The trial court sentenced Garcia to life imprisonment without the benefit of probation, parole, or suspension of sentence. Garcia filed a motion to reconsider his sentence on the basis that it is unduly harsh and excessive. The trial court denied his motion. Garcia now appeals.

7

**DISCUSSION**

Garcia argues that there was insufficient evidence to prove that he was guilty beyond a reasonable doubt. He asserts that J.H.'s testimony, while serious, fails to provide details and reliability sufficient to justify a conviction that carries a mandatory life sentence. The State argues that there was sufficient evidence to find Garcia guilty beyond a reasonable doubt of first degree rape. The State asserts that the jury clearly found J.H. and the other witnesses to be credible.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the case in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Steines*, 51,698 (La. App. 2 Cir. 11/15/17), 245 So. 3d 224. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *Steines, supra.*

The appellate court does not assess the credibility of witnesses or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *Steines, supra*. A reviewing court affords great deference to a trial court's decision to accept or reject the testimony of a witness in whole or in part. *Steines, supra.*

It is the province of the fact finder to resolve conflicting inferences from the evidence. In the absence of internal contradiction or irreconcilable

conflict with physical evidence, the testimony of one witness—if believed by the trier of fact—is sufficient to support the requisite factual conclusion. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence. This is equally applicable to the testimony of sexual assault victims. *State v. Brooks*, 52,249 (La. App. 2 Cir. 9/26/18), 256 So. 3d 524; *Steines, supra*.

> La. R.S. 14:42 provides, in pertinent part:
>
> A. First degree rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> (4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.

We find there was sufficient evidence to convict Garcia of first degree rape. J.H. testified that Garcia called her into his room from the time she was four or five years old until she was 12 years old. She stated that Garcia would rub between her legs up to her vagina, put his body against hers, and put his penis inside her vagina. M.G. confirmed that J.H. and Garcia would spend time alone in his room and sometimes the door would be closed. A.H. testified that J.H. would be in Garcia's room in the mornings, and if the door was closed and he tried to enter, Garcia would tell him to leave. A.H. stated that he saw J.H. and Garcia in the bed together and Garcia was hugging J.H. from behind. J.G. testified that when J.H. was in Garcia's room, the lights would be off, the door closed, and if he tried to enter, Garcia would tell him to leave. J.G. also stated that he heard J.H. report what was happening to their mother. Based on this testimony and the Gingerbread House interviews, the guilty verdict was reasonable.

Although Garcia testified that he did not inappropriately touch J.H. and the children were mistaken in their recount of their mornings, the jury listened to each person testify, and because there was no physical evidence, they made their decision based on who they found to be a more credible witness. As the jury's decision was reasonably based on a credibility call, we will not disturb Garcia's conviction on appeal. This assignment is without merit.

**ERRORS PATENT**

The following errors were noted during our errors patent review. First, the trial court failed to order that Garcia's sentence be served at hard labor as required by La. R.S. 14:42. While the minutes reflect that the sentence is to be served at hard labor, the transcript of the sentencing hearing indicates that the trial court did not specify that the sentence was to be served at hard labor. Where there is a discrepancy between the minute entry and the transcript, the transcript prevails. *State v. Lynch*, 441 So. 2d 732 (La. 1983). The sentence for first degree rape is necessarily punishable at hard labor. *See* La. R.S. 14:42(D). The trial court's oversight to state on the record that the sentence is to be served at hard labor renders the sentence illegally lenient. However, because first degree rape requires the sentence to be served at hard labor, the error is self-correcting. *State v. Burns*, 53,250 (La. App. 2 Cir. 1/15/20), 290 So. 3d 721; *State v. Thomas*, 52,617 (La. App. 2 Cir. 5/22/19), 272 So. 3d 999, *writ denied*, 19-01045 (La. 2/10/20), 292 So. 3d 61.

Second, the trial court failed to properly advise Garcia of the time limits to file for post-conviction relief. La. C. Cr. P. art. 930.8(C) provides that at the time of sentencing, the trial court shall inform the defendant of the

10

prescriptive period for post-conviction relief, either verbally or in writing. Accordingly, we advise Garcia that no application for post-conviction relief shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C. Cr. P. arts. 914 or 922.

## CONCLUSION

For the foregoing reasons, Garcia's conviction and sentence are affirmed.

**AFFIRMED.**