Judgment rendered May 22, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,634-KA
No. 55,635-KA
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

RUSTIN RANDALL MIDDLETON            Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court Nos. 382,343 and 382,427

Honorable Donald Edgar Hathaway, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Peggy J. Sullivan

JAMES E. STEWART, SR.                    Counsel for Appellee
District Attorney

RON CHRISTOPHER STAMPS
REBECCA A. EDWARDS
Assistant District Attorneys

* * * * *

Before STONE, COX, and THOMPSON, JJ.

**COX, J.**

Rustin Randall Middleton was charged with two counts each of aggravated rape and sexual battery under two docket numbers in Caddo Parish, which were consolidated into one proceeding. Middleton was found guilty as charged on all four counts. He was sentenced to two life sentences, 99 years, and 10 years, all to be served consecutively at hard labor and without benefits. Middleton now appeals his convictions and sentences. For the following reasons, we affirm and remand with instructions.

## FACTS

On July 21, 2021, Middleton, born 7/8/1986, was indicted on the following four charges:

Count 1: aggravated rape as defined in La. R.S. 14:42(A)(4)- the victim is N.M.(DOB: 9/25/2006);[1]

Count 2: sexual battery as defined in La. R.S. 14:43.1(A)(2) and (C)(2)- the victim is N.M.;

Count 3: aggravated rape as defined in La. R.S. 14:42(A)(4)- the victim is D.H. (DOB 4/23/93);

Count 4: sexual battery in violation in La. R.S. 14:43.1(A)(2)- the victim is D.H.

The jury trial commenced on March 21, 2023. Jennifer Brumley testified that she is N.M.'s mother; Middleton is her ex-husband; and, Middleton adopted N.M. after they had been married for six months. Ms. Brumley stated that N.M. did not come home from school one afternoon in April of 2021. She stated that N.M. was ultimately found at Byrd High

---

[1] La. R.S. 14:42(E) states:

> For all purposes, "aggravated rape" and "first degree rape" mean the offense defined by the provisions of this Section and any reference to the crime of aggravated rape is the same as a reference to the crime of first degree rape. Any act in violation of the provisions of this Section committed on or after August 1, 2015, shall be referred to as "first degree rape".

School by her grandparents and went to her grandparents' house because she was "deathly afraid" of Middleton. She testified that while at her grandparents' house that evening, N.M. told her that she attempted suicide twice because Middleton was sexually abusing her. When Ms. Brumley asked her what that meant, N.M. described tickling that went too far when she was six to eight years old and stated Middleton began putting his penis in her mouth when she was 11 years old, the summer after she completed sixth grade. Ms. Brumley testified that when N.M. told her when the abuse began, she realized that the abuse coincided with N.M.'s personality changing and her grades falling. N.M. was in a gifted student program and attended Caddo Middle Magnet for both the seventh and eighth grades. Ms. Brumley stated that N.M.'s grades continued to fall in high school.

Ms. Brumley testified that when she learned of the abuse, she called the police and gave police N.M.'s suicide note and journal, in which N.M. had written about the abuse. Ms. Brumley stated that N.M. was taken to the psychiatric ward at Ochsner Shreveport and later to Brentwood Hospital because of her suicide attempts. She stated that she learned N.M. was cutting herself prior to the disclosure and continued cutting herself for six to eight months after the disclosure.

On cross-examination, Ms. Brumley stated that N.M. was required to make at least a 2.5 GPA to stay at Byrd because it was not her neighborhood school. She testified that a 2.5 was an "easy C" and N.M. was not maintaining that GPA. She stated that N.M. was supposed to bring her report card home on the day she disclosed the abuse.

N.M. testified in another room and her testimony was simultaneously televised into the courtroom for the jury. N.M.'s Gingerbread House video

2

was played for the jury. She testified that everything she stated in the video was true. She stated that she began writing down the things Middleton did to her when she was in the ninth grade but did not show them to anyone until the day she did not come home from school. Twenty-eight pages of journal entries were read to the jury. N.M. stated that the front of her journal entries says "goodbye, sorry" because she was planning to kill herself. She stated that she cannot remember the date she began writing the journal entries but the portion that says "goodbye" was written on February 9, 2021. Her journal entries revealed that she could not tell anyone what was happening and liked to just be alone. One entry details physical abuse, stating that Middleton would choke her until she passed out, "bang" her into walls, and slap her. N.M. testified that if she told Middleton she was going to tell her mom about him beating her, he would say that he would make up a reason for beating her, like she had been lying.

In one of the journal entries, N.M. described a time when she was six or eight and Middleton told her to kneel in front of his chair and close her eyes. He put his penis in her mouth and she gagged and choked. She stated that she peeked and saw that it was his penis, but he lied and said it was a test with his thumbs. In another journal entry, she stated that tickling reminds her of when Middleton would tickle her and "go too low." She stated in her journal, "He would mess with me and I would cry. Every time I would cry. I used to be terrified of him. So I would say I didn't like it, and he would tell me I did. Eventually I would get scared and give in and tell him what he wanted to hear." Another journal entry contains details of being forced to kiss him and have "make out sessions." Multiple journal entries contain details of N.M. telling Middleton "no" but ultimately being

3

forced to perform sexual acts.  N.M. stated that this would happen when no one else was home or when siblings were told to leave the room.

N.M. summarized some of the abuse in one of her journal entries.  She stated, "HELP ME!  Sexually harassed!" and listed the following:

(1) at around 6(?)$^2$ was forced to my knees, told to close my eyes, gagged, then lied to
(2) Every time being tickled would go too far- since around 6(?)
(3) Slaps me down to ground if I say no
(4) master at fake orgasms without ever really having one I think
(5) cried almost every time being touched
(6) talked about like I was gonna get raped
(7) Never had a choice, always threatened
(8) Tell anyone & you die
(9) Terrifying!  Hate myself & body!  No one ever cares or is ever gonna save me.
(10) Last time was while out of school [because] others were ACT testing.  First was 6th grade (going to 7th) summer break

On cross-examination, N.M. was questioned about her grades.  She stated that she was not maintaining the required GPA but would not be kicked out of Byrd until the end of the year.  She stated she was scared to go home with her report card because she was failing and had lied to her parents about online access to her report card.

Meaghan Hughes was accepted as an expert in forensic interviewing, delayed reporting, and childhood sexual trauma.  She testified that she is a forensic interviewer at the Gingerbread House and interviewed N.M.  Ms. Hughes's notes from the interview were filed into evidence.  Her notes detail the following statements from N.M. during the interview: tickling went too far; Middleton would touch her vagina and boobs; N.M. forced to kiss Middleton; N.M. was scared; and Middleton beat N.M. and threatened her.

---

$^2$ N.M. testified that the question marks indicated she could not remember her exact age, just the range of six to eight years old.

Ms. Hughes's notes also contain N.M.'s account of being forced to close her eyes while Middleton put his penis in her mouth but told her it was his thumbs.

Olivia Ferguson testified that she is a counselor at the Gingerbread House and counseled N.M. after she was referred by the family advocate team. She testified that in a typical situation, the abused child will attend six to 25 counseling sessions; N.M. attended 74 sessions and was one of the most severe cases Ms. Ferguson has seen. Ms. Ferguson stated that she diagnosed N.M. with PTSD as a result of her physical, sexual, and emotional abuse.

D.H. testified that he is Middleton's stepbrother. He stated that his mother married Middleton's father when he was about six years old and Middleton is six or seven years older than him. D.H. testified that sometime after he turned eight years old, Middleton called him into his room to watch pornography. He stated that this happened multiple times and progressed into Middleton asking him to sit on his lap and touching his penis. He testified that the abuse stopped when Middleton moved out of the house but began again when he was 11 and Middleton moved back into the home. He stated that when he was 12, Middleton performed oral sex on him and asked for it in return. He stated that he was always uncomfortable and finally told Middleton he was not doing it anymore. He testified that his family moved to Arkansas after that and Middleton did not move with them. D.H. stated that after he heard about N.M.'s disclosure, he disclosed to his mother what happened to him. He testified that he felt "extremely guilty" for not disclosing the incidents sooner because he felt like he could have prevented what happened to N.M.

Shreveport Police Department Detective David Karam testified that he received a call at 2:30 a.m. on April 13, 2021, informing him that N.M. disclosed being sexually abused by her father. He stated that he observed N.M.'s interview at the Gingerbread House and reviewed her journal entries. He stated that he learned that Middleton had penetrated N.M.'s vagina with his fingers and forced her to perform oral sex. He testified that during his investigation, he was informed that D.H. disclosed sexual abuse by Middleton as well. Det. Karam obtained an arrest warrant for Middleton and alerted Caddo Parish Sheriff's Department ("CPSD") for the portion of the investigation that occurred outside Shreveport city limits.

CPSD Detective Christopher Ardoin testified that he received information from Det. Karam on D.H.'s report of sexual abuse. Det. Ardoin's account of his interview with D.H. corroborated D.H.'s testimony.

The defense called R.M., N.M.'s younger sister and Middleton's daughter, to the stand. At the time of trial, R.M. was 12 years old. She stated that after her Gingerbread House interview, she knew she had not been completely honest with the interviewer. R.M. could not recall details of the interview but knew she lied about not seeing her sister being abused. She stated she was not truthful because she was scared of Middleton.

Middleton testified that he had cancer at the age of 15 and has been disabled and unable to work since 2013. He stated that he has been on various medications in the past and is currently on medication for pain, nerve damage, and sleep. Middleton admitted that N.M. would rub the outside of his thigh and foot because it helped with the nerve damage, but he denied that she ever rubbed the inside of his thigh. Middleton also denied living in the house with D.H. when D.H. claimed Middleton had moved

6

back in. Middleton testified that D.H.'s testimony was "disgusting" and denied ever sexually abusing D.H.

Middleton testified that he required his children to make straight A's and would discipline them for making B's or C's. He stated that he threatened to take N.M. out of Byrd before they kicked her out if she had F's. Middleton stated that N.M. did not bring her report card home the previous week and was told to bring it home on Monday, April 12, 2021. He testified that she texted him that she was riding the bus home instead of going to tutoring and he asked her if she had her report card. He stated that N.M. never came home on the bus. Middleton detailed the places he searched for N.M. when she did not get off the bus. Middleton stated that police arrived at his house the next day and arrested him for rape. Middleton denied the rape and sexually abusing anyone. On cross-examination, Middleton admitted to being physically abusive in spanking the children.

The jury deliberated for about an hour and a half and unanimously found Middleton guilty as charged on all four counts.

Middleton filed a motion for new trial and motion for post-verdict judgment of acquittal, which were denied in open court. At sentencing, the trial court detailed the negative effects on both victims and highlighted that Middleton had been so cruel to N.M. that she had to testify from a different location. The trial court stated that because he preyed on both male and female victims, he was the worst of the worst. The trial court found the following from La. C. Cr. P. art. 894.1(A) to be applicable: there is an undue risk that defendant will commit another crime; defendant needs correctional treatment; and a lesser sentence would deprecate the seriousness of the crime. Regarding aggravating factors, the trial court found: the offender's

7

conduct during the commission of the offense manifested deliberate cruelty to the victims; the offender knew or should have known that the victims were particularly vulnerable or incapable of resistance due to youth; the offender used his position or status to facilitate the commission of the offense; the offender used threats or actual violence in the commission of the offense; the offense resulted in a significant permanent injury to the victim and his/her family; the offender was persistently involved in similar offenses; and the offender has not accepted responsibility for his actions. The trial court considered mitigating factors but did not find any to apply.

The trial court sentenced Middleton to the following sentences, all to be served at hard labor and without benefits: life for count 1; 99 years for count 2; life for count 3; and 10 years for count 4. The sentences were ordered to run consecutively. The trial court filed into the record its sentencing guideline, outlining its sentencing considerations. Middleton filed a motion to reconsider sentence, which was denied by the trial court. Middleton now appeals.

## ARGUMENTS

*Sufficiency of the Evidence*

Middleton asserts that the evidence was not sufficient to support the felony convictions. Middleton highlights N.M.'s grades and N.M. not bringing her report card home. He testified that he never sexually abused N.M., but he told her days before the reported abuse that she would have to go to Huntington High School if she had F's on her report card. He argues that there were no witnesses to corroborate N.M.'s testimony and no physical evidence was introduced. He highlights that N.M.'s journal entries were written in her ninth-grade year, the same year she disclosed the abuse.

8

Regarding D.H., Middleton states that he did not live in the home with D.H. for "some time" prior to the report of abuse. He points out that D.H.'s allegations were not made until after N.M. made her allegations. Middleton argues that N.M. and D.H. were close and he had previously expressed that they were too close. Middleton also denied ever abusing D.H.

The State highlights the detailed testimonies of N.M., her mother, Ms. Hughes, Ms. Ferguson, Det. Karam, Det. Ardoin, D.H., and R.M. The State argues that the testimonies of N.M. and D.H. were sufficient to establish the elements of the offenses. The State asserts that the jury was required to make a witness credibility determination and Middleton's arguments were not believed by the jury.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the case in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Steines*, 51,698 (La. App. 2 Cir. 11/15/17), 245 So. 3d 224, *writ denied*, 17-2174 (La. 10/8/18), 253 So. 3d 797. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *Steines, supra.* The appellate court does not assess the credibility of witnesses or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Bass*, 51,411 (La. App. 2 Cir 6/21/17), 223 So. 3d 1242. A reviewing court

affords great deference to a trial court's decision to accept or reject the testimony of a witness in whole or in part. *Bass, supra.*

It is the province of the fact finder to resolve conflicting inferences from the evidence. In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness—if believed by the trier of fact—is sufficient to support the requisite factual conclusion. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence. This is equally applicable to the testimony of sexual assault victims. *Bass, supra.*

La. R.S. 14:42 states, in relevant part:

A. First degree rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
…
(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.

La. R.S. 14:43.1 states, in relevant part:

A. Sexual battery is the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, directly or through clothing, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, directly or through clothing, when any of the following occur:
…
(2) The victim has not yet attained fifteen years of age and is at least three years younger than the offender.

The evidence was sufficient to convict Middleton of first degree rape and sexual battery of N.M. N.M. testified that Middleton began inappropriately touching her and putting his penis in her mouth when she was six or eight years old, and her journal entries about the incidents were read for the jury. In addition, Ms. Ferguson, N.M.'s counselor from the

Gingerbread House, testified that N.M. was one of the most severe cases she had seen as a result of abuse. Ms. Ferguson testified that N.M. suffered from PTSD because of Middleton's abuse. Middleton testified on his own behalf and denied the allegations made by N.M. Middleton admitted that his physical discipline of the children would be taken too far, but he stated he never sexually abused N.M.

The jury was required to make a credibility determination as to whether they believed Middleton's testimony or that of N.M. N.M.'s testimony was supported by her journal entries and the testimony of her counselor, Ms. Ferguson. Based on the evidence and testimony presented at trial, the jury had sufficient evidence to find Middleton guilty of the crimes against N.M. This argument lacks merit.

The evidence was also sufficient to convict Middleton of first degree rape and sexual battery of D.H. D.H.'s testimony alone was sufficient for the jury to find Middleton guilty. D.H. stated that Middleton began bringing him into his room to watch pornography after he turned 8 years old. He stated that watching pornography progressed into sitting on Middleton's lap, touching his penis, and performing oral sex. Again, because Middleton testified and denied the allegations made by D.H., the jury was tasked with making a credibility determination. The guilty verdict indicates that the jury found D.H. to be credible and believed his version of the events. We will not disturb the jury's credibility determination in this case. This assignment of error lacks merit. We affirm Middleton's four convictions.

*Excessive Sentence*

Middleton argues that he should not be characterized as the worst of the worst. He argues that the trial court erred in including his failure to

accept responsibility for his actions as an aggravating factor. He states that his constitutional right to trial should not be considered an aggravating factor. He argues that while the life sentences were mandatory, the remainder of the sentencing decisions were not. He asserts that the consecutive sentences and 99-year sentence are constitutionally excessive.

The State argues that a review of the sentencing transcript precludes any finding of an abuse of sentencing discretion by the trial court. The State detailed the trial court's considerations under the La. C. Cr. P. art. 894.1 factors and noted that the trial court also filed a sentencing memorandum outlining sentencing considerations.

Trial courts have limited discretion to order that multiple sentences be served concurrently or consecutively. *State v. Powell*, 54,893 (La. App. 2 Cir. 3/1/23), 357 So. 3d 559, *writ denied*, 23-00428 (La. 10/31/23), 372 So.3d 809; *State v.* Sandifer, 54,103 (La. App. 2 Cir. 12/15/21), 330 So. 3d 1270. Concurrent sentences that arise from a single course of conduct are not mandatory; likewise, consecutive sentences under those circumstances are not necessarily excessive. *Powell, supra*; *State v. Harris*, 52,663 (La. App. 2 Cir. 8/14/19), 277 So. 3d 912. However, where convictions stem **from separate incidents** involving different victims and occurring over a lengthy period of time, the resulting consecutive penalties will not be found to be an abuse of discretion. *Powell, supra*; *State v. Bailey*, 50,097 (La. App. 2 Cir. 9/30/15), 180 So. 3d 442.

An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long

12

as the record reflects he adequately considered the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Garner*, 52,047 (La. App. 2 Cir. 6/27/18), 250 So. 3d 1152.  The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions.  Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1.  *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. Brooks*, 52,249 (La. App. 2 Cir. 9/26/18), 256 So. 3d 524; *State v. Ates*, 43,327 (La. App. 2 Cir. 8/13/08), 989 So. 2d 259, *writ denied*, 08-2341 (La. 5/15/09), 8 So. 3d 581.  The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, and employment record), prior criminal record, the seriousness of the offense, and the likelihood of rehabilitation.  There is no requirement that specific matters be given any particular weight at sentencing.  *State v. Taves*, 03-0518 (La. 12/03/03), 861 So. 2d 144; *Brooks, supra.*

Second, a sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.  *State v. Smith*, 01-2574 (La. 1/14/03), 839 So. 2d 1; *Garner, supra*.  A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.  *Brooks, supra.*

The trial court has wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed will not be set aside as excessive absent a manifest abuse of that discretion.  *State v. Williams*, 03-

13

3514 (La. 12/13/04), 893 So. 2d 7; *Brooks, supra*. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *Williams, supra*; *Brooks, supra*.

Whoever commits the crime of first degree rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. La. R.S. 14:42(D)(1). La. R.S. 14:43.1 provides, in pertinent part:

> C. (1) Whoever commits the crime of sexual battery shall be punished by imprisonment, with or without hard labor, without benefit of parole, probation, or suspension of sentence, for not more than ten years.
>
> (2) Whoever commits the crime of sexual battery on a victim under the age of thirteen years when the offender is seventeen years of age or older shall be punished by imprisonment at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.
>
> La. C. Cr. P. art. 883 states:
>
> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.

As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Cozzetto*, 07-2031 (La. 2/15/08), 974 So. 2d 665; *State v. Lapoole*, 51,199 (La. App. 2 Cir. 2/15/17), 215 So. 3d 430, *writ denied*, 17-0618 (La. 11/28/17), 230 So. 3d 220.

Middleton's sentences were all set to run consecutively to one another. Middleton had a total of four crimes against two separate victims and the crimes occurred over multiple years. The crimes against N.M. were a separate occurrence from the crimes against D.H. The sexual battery and first degree rape of N.M. occurred over a span of over five years. The sexual battery and first degree rape of D.H. occurred over approximately four years. These four convictions arise out of at least four separate incidents. Therefore, the consecutive sentences are appropriate under La. C. Cr. P. art. 883.

Middleton's two sentences of life imprisonment for first degree rape were mandatory under La. R.S. 14:42. The trial court had no discretion in the imposition of those sentences. Middleton was given two maximum sentences of 10 years and 99 years under La. R.S. 14:43.1(C)(1) and (C)(2), respectively. We review these two sentences under the abuse of discretion standard.

We do not find that the trial court abused its discretion in sentencing Middleton to 10 years and 99 years for sexual battery. The trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial court found that there was an undue risk that Middleton would commit another crime; Middleton needed correctional treatment; and a lesser sentence would deprecate the seriousness of the offense. The trial court's list of aggravated factors is listed above, and although he did not find any mitigating factors to apply, he stated that he did consider them. The trial court noted the negative effects that Middleton's action had on both victims. Although the trial court mentions that Middleton did not take responsibility for his actions, Middleton has maintained his innocence. Factors are not given particular

weight at sentencing.  Therefore, not considering this one factor, the trial court's remaining sentencing considerations are supported by the record and sufficient to support the sentences.  The first prong of our review has been met.

Now, we turn to whether the sentences were grossly disproportionate to the offenses.  Given the prolonged and sexual nature of the offenses and the fact that Middleton had a male and female victim, the trial court found Middleton to be the worst of the worst.  We agree.  The facts reveal that Middleton began inappropriately touching his victims at a very young age and continued the conduct for years.  These maximum sentences do not shock the sense of justice and are not disproportionate to the years of abuse suffered by the victims.

This assignment of error lacks merit.  We affirm Middleton's sentences.

*Error Patent*

A review for error patents reveals that the record does not include a written notice of the sex offender registration requirements set forth in La. R.S. 15:540, *et seq*.  The State also concedes this error in brief.  Middleton's convictions are sex offenses under La. R.S. 15:541.  La. R.S. 15:543 requires that the trial court provide written notice of the registration and notification requirements to a defendant convicted of a sex offense and that an entry be made in the court minutes stating that the written notification was provided to the defendant.  Accordingly, we remand this matter to the trial court for the purpose of providing the appropriate written notice to Middleton of the sex offender registration requirements on his convictions and for the filing of

written proof of such notice in the record of the proceedings. *State v. Allen*, 54,153 (La. App. 2 Cir. 12/15/21), 331 So. 3d 1101.

## CONCLUSION

We affirm the convictions and sentences of the defendant, Rustin Randall Middleton. We remand this matter to the trial court for the limited purpose of providing the defendant with the appropriate written notice of the sex offender registration requirements.

**CONVICTIONS AND SENTENCES AFFIRMED; REMANDED WITH INSTRUCTIONS.**