+-Judgment rendered August 28, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,722-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

RAMON D. GRANT                              Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 387,027

Honorable Erin Leigh Waddell Garrett, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Douglas Lee Harville

JAMES E. STEWART, SR.                 Counsel for Appellee
District Attorney

TOMMY JAN JOHNSON
ROSS S. OWEN
ERICA N. JEFFERSON
Assistant District Attorneys

* * * * *

Before COX, MARCOTTE, and ELLENDER, JJ.

**COX, J.**

This criminal appeal arises out of the First Judicial District Court, Caddo Parish, Louisiana. Following a jury trial, Ramon D. Grant ("Grant") was unanimously convicted of possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1 (count one); possession with the intent to distribute a Schedule II controlled dangerous substance in violation of La. R.S. 40:967(A)(1) and (B)(1)(a) (count two); and illegal carrying of a weapon while in possession of a controlled dangerous substance in violation of La. R.S. 14:95(E) (count three).

Regarding count one, Grant was ordered to pay $1,000 or in default, serve 60 days in jail, and serve 18 years at hard labor without benefit of probation, parole, or suspension of sentence. As to count two, Grant was ordered to serve seven years at hard labor, and as to count three, Grant was ordered to serve eight years at hard labor without benefits, with each sentence to run concurrently. For the following reasons, we affirm Grant's convictions and amend his sentence as to count one to vacate the portion of the sentence imposing jail time in default of payment of fines imposed.

## FACTS

On February 16, 2022, the State filed a bill of information charging Grant with the following three offenses: possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1, possession with the intent to distribute a Schedule II controlled dangerous substance in violation of La. R.S. 40:967(A)(1) and (B)(1)(a), and illegal carrying of a weapon while in possession of a controlled dangerous substance in violation of La. R.S. 14:95(E). The State alleged that on January 4, 2022, Grant was engaged in a

high-speed chase, where he was discovered to be a convicted felon in possession of a firearm and methamphetamine.

A preliminary hearing regarding probable cause for the arrest was held on May 19, 2022. Deputy Justin Dunn ("Deputy Dunn"), of Caddo Parish Sheriff's Narcotics Division, and the arresting officer, testified generally about the circumstances leading to Grant's arrest. Following Deputy Dunn's testimony, the court reviewed Grant's criminal record and noted that Grant was previously convicted of first-degree murder in Texas. In response to the court's inquiry about the conviction, Grant stated on the record that he was not on parole and served his sentence. The court then determined probable cause existed for Grant's arrest.

Thereafter, on March 6, 2023, trial commenced wherein the following pertinent testimony was presented:

Deputy Dunn testified that on January 4, 2022, while en route to work in an unmarked patrol unit, he was almost hit twice by a vehicle that sped past him as he turned onto the highway. Deputy Dunn stated that the vehicle traveled "well over 100 miles an hour," and that he had to accelerate to almost 120 miles per hour to catch up. Deputy Dunn explained that during the chase, he initiated his sirens for the driver to pull over, but the driver continued to accelerate, failed to yield for traffic, ran through a red light, and wove in and out of traffic. He further detailed that during the chase, the driver accelerated at full speed and made a few turns before he encountered a large truck that was forced to drive onto the curb to avoid being hit.

Deputy Dunn testified that at one point, he lost sight of the vehicle for a few seconds but discovered that the driver crashed his vehicle. Deputy Dunn stated that as he drove up to the scene, the driver had already exited

the vehicle and jumped on the hood of the unmarked patrol unit. Deputy Dunn explained that as he exited his vehicle, he identified himself as an officer and ordered the man to get on the ground, but the driver jumped from the hood of the patrol unit and fled on foot. Deputy Dunn testified that he chased the driver for approximately 100 yards before he apprehended the driver. Deputy Dunn testified that he conducted a pat-down, handcuffed, and *Mirandized* the driver. According to Deputy Dunn, the driver informed him there was a gun in the crashed vehicle, that he drove erratically because he had to pay a bill, and fled because he was a convicted felon and did not want to be caught with the firearm.

Deputy Dunn then identified Grant in open court as the driver he encountered on January 4, 2022. Deputy Dunn then explained that when he searched Grant's vehicle, he discovered a loaded semi-automatic handgun on the floorboard of the driver's seat and a digital scale in the console.[1] Deputy Dunn stated that he also found a small bag of what appeared to be methamphetamine under his patrol unit where Grant stood just before he was handcuffed. Deputy Dunn explained that no other person was present when he apprehended Grant or searched the vehicle, so there could be no other way the drugs could have gotten underneath the patrol unit.

Deputy Dunn stated that after Grant was arrested, he was taken to Caddo Correctional Center where Grant made a recorded phone call to an unidentified female caller. Deputy Dunn explained that during the call, Grant disclosed that the firearm and drugs that were in the vehicle had been found and that he was aware he was chased by law enforcement.

---

[1] Deputy Dunn explained that a digital scale, like the one he recovered from Grant's vehicle, is typically used to weigh and measure drugs for distribution.

3

Next, Randall Robillard ("Robillard"), tendered as an expert in forensic chemistry, testified that he tested and confirmed that the bag of drugs discovered under Deputy Dunn's patrol unit was methamphetamine. Agent Kevin Harris ("Agent Harris") of the Caddo Parish Narcotics Division also testified generally that the 18 grams of methamphetamine recovered from the arrest is more than one person would generally have for personal use and was more consistent with the sale or distribution of drugs. Agent Harris stated that it was common for people to possess a firearm registered in another person's name, particularly so for convicted felons because they cannot legally purchase a firearm on their own.

John Rowe ("Rowe") of the Louisiana Department of Public Safety and Corrections, Division of Probation and Parole Division, testified that he was a specialist in probation and parole. Rowe stated that in reference to this case, he researched the criminal records for Ramon Deshon Grant. The State then introduced Exhibit 6, which Rowe identified as court documents from Texas indicating that an individual named "Ramon Grant" was arrested for first degree murder on June 14, 2006, convicted on February 28, 2008, and sentenced to serve 15 years. Rowe testified that the ten-year cleansing period for firearm possession for convicted felons in Louisiana had not yet lapsed as of the date of the offense.

Rowe testified that he identified the individual who was convicted in the documents from Exhibit 6 and could likewise identify that person in the courtroom. Rowe stated that the district attorney's office sent additional discovery information, and he "went through that and pulled out [his] date of birth, social security number, State ID number, and ran his criminal history which provided a photograph of him." Rowe then confirmed that Grant was

the same individual who was convicted of first degree murder in Texas as identified in Exhibit 6. On cross-examination, Rowe confirmed that, based on the documents in Exhibit 6, Grant took a plea agreement to serve 15 years for the offense.

Finally, Keriosha Buford ("Buford"), Grant's girlfriend, testified that the morning Grant was arrested, Grant dropped her off at work and took her vehicle to pay a bill. After defense counsel introduced a photograph of the firearm recovered from the vehicle, Buford stated that she purchased a 9-millimeter firearm approximately four or five months prior, but before she met Grant. Buford stated she kept the firearm under the seat in her vehicle because she worked nights and needed it for her safety.

Buford explained that while she and Grant lived together, he did not know she kept the weapon in the vehicle, and she did not tell him because Grant did not normally drive her vehicle. On cross-examination, Buford admitted she knew Grant had a prior felony conviction for murder and that he was not permitted to possess a firearm. Buford, however, denied knowing that there was a digital scale found in the console of the vehicle. Buford stated that she only learned that Grant used drugs after her vehicle was wrecked but did not think that Grant sold drugs.

At the close of testimony, the jury returned a unanimous guilty verdict for each count. Thereafter, Grant filed a motion for post-verdict judgment of acquittal and a motion for new trial, both of which were denied by the trial court. A sentencing hearing was held on May 31, 2023, where the trial court considered the enumerated factors of La. C. Cr. P. art. 894.1 and sentenced Grant as follows:

> So considering the factors of 894.1[,] on the possession of a firearm while carrying a concealed weapon by a convicted felon, the Court is going to sentence you to 18 years [at] hard labor without benefit. On the possession with intent to distribute Schedule II less than 28, I'm going to sentence you to seven years hard labor. On illegal carrying of weapons while also in the possession of a controlled dangerous substance, I'm going to sentence you to eight years without benefit in accordance with statutory guidelines.
>
> I'm going to run them all concurrent with each other but consecutive to anything else. . . He gets credit for time served.

In correcting count one, the trial court provided:

> I'm going to in [c]ount 1, I think, is the firearm felon, the statute requires that I also sentence you to [a] $1,000 fine, but what I'm going to do is I'm going to execute that and convert it to days in lieu and have you serve 60 days in lieu and I'm going to run that concurrent too.

Grant then filed a motion to reconsider sentence on June 27, 2023, and the motion was denied on July 5, 2023. This appeal followed.

## DISCUSSION

In his sole assignment of error, Grant contends that the State failed to present sufficient evidence to convict him of possession of a firearm by a convicted felon. Specifically, Grant argues that the State did not sufficiently prove he was the same Ramon Grant who committed the predicate offense of first degree murder in Texas to sustain the current conviction.

The standard of appellate review for a sufficiency of the evidence claim in a criminal case is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L.Ed. 2d 248 (2004). The *Jackson* standard, now

6

legislatively embodied in La. C. Cr. P. art 821, does not afford the appellate court with a means to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Steines*, 51,698 (La. App. 2 Cir. 11/15/17), 245 So. 3d 224, *writ denied*, 17-2174 (La. 10/8/18), 253 So. 3d 797.

The *Jackson* standard also applies in cases involving both direct and circumstantial evidence. An appellate court which reviews the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is viewed as such, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983).

Likewise, if a case rests essentially upon circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; *see also*, *State v. Mingo*, 51,647 (La. App. 2 Cir. 9/27/17), 244 So. 3d 629, *writ denied*, 17-1894 (La. 6/1/18), 243 So. 3d 1064. The appellate court will review the evidence in the light most favorable to the prosecution and determine whether an alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. *State v. Calloway*, 07-2306 (La. 1/21/09), 1 So. 3d 417; *State v. Garner*, 45,474 (La. App. 2 Cir. 8/18/10), 47 So. 3d 584, *writ not cons.*, 12-0062 (La. 4/20/12), 85 So. 3d 1256.

In the absence of any internal contradiction or irreconcilable conflict with physical evidence, the testimony of the witness, if believed by the trier

of fact, alone, is sufficient support for a requisite factual conclusion. *State v. Elkins*, 48,972 (La. App. 2 Cir. 4/9/14), 138 So. 3d 769, *writ denied*, 14-0992 (La. 12/8/14), 153 So. 3d 438; *State v. Wiltcher*, 41,981 (La. App. 2 Cir. 5/9/07), 956 So. 2d 769.

Where there is conflicting testimony concerning factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Allen*, 36,180 (La. App. 2 Cir. 9/18/02), 828 So. 2d 622, *writ denied*, 02-2997 (La. 6/27/03), 847 So. 2d 1255. The appellate court neither assesses the credibility of witnesses nor reweighs evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442. Rather, the reviewing court affords great deference to the jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Gilliam*, 36,118 (La. App. 2 Cir. 8/30/02), 827 So. 2d 508, *writ denied*, 02-3090 (La. 11/14/03), 858 So. 2d 422.

When the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. Positive identification by one eyewitness or victim may suffice to support a conviction. *State v. Hughes*, 05-0992 (La. 11/29/06), 943 So. 2d 1047. It is the factfinder who weighs the respective credibility of the witnesses, and this Court will generally not second-guess those determinations. *Id.*

Grant challenges his conviction for possession of a firearm by a convicted felon, arguing that the State did not meet its burden because its witness, Rowe, was never asked to identify Grant in court; the photograph of the individual identified as "Ramon Deshun Grant" in State's Exhibit 6 was

8

not placed in evidence; and neither Grant's date of birth, driver's license, nor social security number was introduced as evidence. After a review of the record and exhibits presented before this court, we disagree with Grant's assertion that Rowe failed to identify Grant as the same individual identified in Exhibit 6.

La. R.S. 14:95.1 provides, in pertinent part, that it is unlawful for any person who has been convicted of a crime of violence, in this case, first degree murder, to possess a firearm or carry a concealed weapon. To support a conviction for possession of a firearm by a convicted felon, the State must prove: (1) the possession of the firearm; (2) a previous conviction of an enumerated felony; (3) absence of the 10-year statute of limitation; and (4) general intent to commit the offense. *State v. Green*, 51,784 (La. App. 2 Cir. 1/10/18), 245 So. 3d 1105, *reh'g denied*, (La. App. 2 Cir. 2/22/18).

The State has the burden of proving the existence of the prior felony convictions. Courts have recognized various methods that may be used to establish a defendant's previous conviction identity, including witness testimony, expert opinion regarding the fingerprints of the accused when compared to those of the person previously convicted, photographs contained in an authenticated record, or evidence of identical driver's license numbers, sex, race, and date of birth. *Id.*; *State v. Jones*, 41,429 (La. App. 2 Cir. 9/27/06), 940 So. 2d 131, *writ denied*, 06-2769 (La. 9/14/07), 963 So. 2d 394. The mere fact that the defendant on trial and the person previously convicted have the same name does not constitute sufficient evidence of identity. *Id.*; *State v. Watson*, 40,059 (La. App. 2 Cir. 9/21/05), 911 So. 2d 396.

9

In this case, the State filed a bill of information charging Grant, identified as "Ramon D. Grant," in part, with possession of a firearm by a convicted felon. In establishing Grant's identity as a previously convicted felon, the State introduced Exhibit 6, documents from Texas detailing that an individual identified as "Ramon Deshon Grant" pled guilty to first degree murder in Texas in 2008. In reviewing those documents, Rowe testified that the individual, "Ramon Grant," was convicted of first degree murder and was sentenced to 15 years.

Rowe was then asked if he could identify the individual in those documents "here in the courtroom today?" Rowe confirmed that he was able to identify that person. Rowe further testified that he received additional information from the district attorney's office and was able to obtain his "date of birth, social security number, State ID number, and ran his criminal history which provided a photograph of him." Rowe was asked once again if he could identify that individual, to which Rowe responded in the affirmative. Rowe was then asked if this was the "same individual that was convicted in those documents," and Rowe again responded that it was.

In addition to Rowe's testimony, Buford, Grant's girlfriend, testified that she was aware Grant had a prior felony conviction for murder. Further, Deputy Dunn testified that Grant admitted that he only fled because he was a convicted felon and was prevented from being in possession of a firearm.

Although the supplemental documents Rowe stated he received from the district attorney's office were not submitted into evidence, the State presented sufficient evidence to show that the "Ramon Deshon Grant" convicted in Texas is the same "Ramon D. Grant" convicted in the present case. Moreover, the jury, who heard the testimony from all witnesses, was

10

free to make a credibility determination regarding Grant's identity as a previously convicted felon based on the testimony presented. Because great deference is given toward a jury's decision to either accept or reject the testimony of a witness in whole or in part, this Court will not re-evaluate the credibility of a witness or reweigh the evidence presented.

Therefore, in viewing the evidence in the light most favorable to the prosecution, as required under the *Jackson* standard, we find that the State presented sufficient evidence as to Grant's identity as a previously convicted felon for any rational trier of fact to find beyond a reasonable doubt that Grant was the same individual who committed the predicate offense of first degree murder as identified in State's Exhibit 6 to convict him as charged.

This Court, however, notes that careful consideration must be made toward the introduction of all evidence to establish each element of the offense for which a defendant stands accused. Because the State bears the burden to prove beyond a reasonable doubt that a defendant is guilty, it must prove each element by solid evidence which *firmly* convinces and leaves no reasonable doubt. Regarding a defendant's identity, the State maintains the burden to negate any reasonable probability of misidentification.

In this case, the State relied primarily on Rowe's testimony to satisfy this portion of its burden. While witness and expert testimony may be used to establish a defendant's identity, in this case, the State possessed additional information regarding Grant's identity: discovery documents which contained his photograph, date of birth, social security number, and State ID. These documents could have only served to bolster the State's case and dispel any confusion as to Grant's identity. The jury was free to accept or *reject* Rowe's testimony and should the jury have not taken Rowe at his

11

word that he verified Grant's identity to confirm that he was the same individual identified in Exhibit 6, this case could have taken a very different turn regarding Grant's identity as a previously convicted felon.

This Court urges caution for the State in the future to present its evidence to the fullest to solidify its case.

**Error Patent**

Our review of the record has disclosed an error patent discoverable on the face of the record and which requires amending.

Specifically, we note that the trial court, in sentencing Grant as to his conviction for possession of a firearm by a convicted felon, provided that Grant was to pay $1,000 or in default, serve 60 days in jail, and serve 18 years at hard labor without benefit of probation, parole, or suspension of sentence.

It is well settled that an indigent defendant cannot be subjected to default jail time in lieu of the payment of a fine, costs, or restitution. *State v. Jarratt*, 53,525 (La. App. 2 Cir. 6/24/20), 299 So. 3d 1202. A defendant's indigent status may be discerned from the record. *Id*. This court considers it error for a trial court to impose jail time in default of payment and may amend an indigent defendant's sentence to vacate that portion imposing a fine in lieu of jail time. *State v. Modique*, 50,413 (La. App. 2 Cir. 1/27/16), *writ denied*, 16-0464 (La. 3/13/17), 216 So.3d 801.

The record reveals that counsel from the indigent defender's office was appointed to represent Grant at trial and he is represented on appeal by the appellate project. We therefore conclude that this is presumptive evidence of indigency. *State v. Benavides*, 54,265 (La. App. 2 Cir. 3/9/22), 336 So. 3d 114. Because of the defendant's indigent status, the trial court

12

erred in imposing jail time in the event of default on payment of the imposed fines and fees. Therefore, we amend the sentences imposed to vacate the imposition of jail time in lieu of payment of fines and fees.

## CONCLUSION

For the foregoing reasons, Grant's convictions are affirmed. Grant's sentence for possession of a firearm by a convicted felon is amended to vacate the default time in lieu of payment of the fines imposed. All other sentences are affirmed.

**CONVICTIONS AFFIRMED; SENTENCE ON COUNT I AMENDED, AND AS AMENDED, AFFIRMED; SENTENCES ON COUNT II AND COUNT III AFFIRMED.**